STATE, EX REL. FRED C. AYRES ET AL., APPELLANTS, V. DARIUS M. AMSBERRY, SECRETARY OF STATE, APPELLEE.

FILED MARCH 13, 1920. No. 21212.

1. **Statutes: REFERENCE: PETITION.** Under sections 2835 and 2337, Rev. St. 1913 (amended, Laws 1919, ch. 86), it is not requisite that each sheet of referendum petitions, circulated for signatures, where the referendum is sought as to the entire act, shall be attached to a full and correct copy of the measure on which the referendum is demanded. If referendum is desired upon a portion of the act only, that portion which the petitioners desire submitted should be printed upon the petition.

2. ——: ——: ——,—. Under section 2337, *supra*, it is requisite that the referendum petition, taken as a whole, which includes all of the various sheets, have attached to it, when offered for filing, a full and correct copy of the measure.

3. ——: ——: ——. In the instant case, the act sought to be referred contains 461 pages. *Held*, that a law requiring a full copy of the act to be attached to each sheet of the petition, containing room for 20 petitioners and no more, would be unreasonably obstructive.

4. ——: ——: PERMISSIVE LEGISLATION. Section 1D, art. III of the Constitution, provides as follows: "This amendment shall be self-executing, but legislation may be enacted especially to facilitate its operation." Under this provision, legislation permissible

104 Neb.—18

State, ex rel. Ayres, v. Amsberry.

must be such as frees the operation of the constitutional provisions from obstruction or hindrance. Any legislation which would unreasonably hamper or render ineffective the power reserved to the people would be unconstitutional. Reasonable legislation to prevent fraud, or to render intelligible the purpose of the proposed law, would not be objectionable as not facilitating the operation of the amendment.

5. ———: ———: DUTIES OF SECRETARY OF STATE. The duties of the secretary of state are ministerial. His duties relative to referendum petitions are defined by statute. He would have no power to exercise functions strictly judicial in their nature.

6. Appeal: JURISDICTION: TIME. Where the parties to an action have stipulated for its hearing upon the merits in this court, and have proceeded to prepare and file briefs in accordance with the stipulation, and appellee in his brief suggests that the court is without jurisdiction to hear the appeal because it was not taken within ten days, as provided by statute, but no plea or motion, objecting to jurisdiction, was ever made, the court may disregard the suggestion and argument made in the brief.

APPEAL from the district court for Lancaster county: WILLIAM M. MORNING, JUDGE. *Reversed, with directions.*

*Dexter T. Barrett,* for appellants.

*Clarence A. Davis,* Attorney General, *George W. Ayres, J. B. Barnes* and *Burkett, Wilson, Brown & Wilson,* contra.

*C. M. Skiles* and *A. G. Wolfenbarger, amici curiæ.*

CORNISH, J.

Mandamus to compel the secretary of state to file a referendum petition upon Senate File No. 2, enacted at the 1919 session of the legislature, and known as the "Code Bill," which petition the secretary of state refused to file, on the ground that there was not attached to the various sheets or sections of the petition a "full and correct copy" of the enacted law. Relators appeal from a judgment sustaining the secretary.

Section 2335, Rev. St. 1913 (amended, Laws 1919, ch. 86), is in part as follows: "The following shall be substantially the form of petition for ordering the referen-

dum against any act or any part of any act passed by the legislature of the state of Nebraska.

"Petition for Referendum.

"To the Honorable————, Secretary of State for the State of, Nebraska: We, the undersigned citizens and legal voters of the state of Nebraska and the county of ————, respectfully order that the Senate (or House) Bill No. —— entitled (title of act, and if the petition is against less than the whole act then set forth here the part or parts on which the referendum is sought)," etc.

The petition in controversy complied in all respects with this provision of the law, showing title of the act, but did not have attached to it a copy of the law.

Section 2336 gives the form of petition for proposed legislation by initiative. This section requires the proposed law to be set forth in the petition, or attached to it.

Section 2337 provides in part as follows: "Every such sheet for petitioners' signatures shall be attached to a full and correct copy of the title and text of the law or amendment to the Constitution so proposed by the initiative petition; but such petition may be filed with the secretary of state in numbered sections for convenience in handling, and referendum petitions shall be attached to a full and correct copy of the measure on which the referendum is demanded and may be filed in numbered sections in like manner. Not more than twenty signatures on one sheet shall be counted. When any such initiative or referendum petition shall be offered for filing, the secretary of state, in the presence of the governor and the person offering the same for filing, shall detach the sheets containing the signatures and affidavit and cause them all to be attached to one or more printed copies of the measure so proposed by initiative petitions, or of the act or part of an act against which referendum petitions are filed."

Relators cite our opinion in *Bartling v. Wait*, 96 Neb. 532, as decisive of the question in dispute. The respond-

ent argues that in that decision section 2335, *supra,* only was construed. No detailed discussion of the language used in section 2337 is entered into; and it is probably true that some of the questions involved in the proper interpretation of section 2337 were not considered by the court at that time, and that the rule laid down might not come under the doctrine *stare decisis.* On the other hand, the immediate question was in issue. A purported copy of the act was printed on the petition. It omitted an important word, and it was urged that this made the petition void, because section 2337 required "a full and correct copy of the act proposed" to be printed upon the petition. We held that section 2335 governed, and that section 2337 was inapplicable to referendum petitions. In so holding we, in effect, held that "a correct copy" of the measure need not be attached to referendum petitions.

It is to be observed that to secure intelligent petitioning the need for an attached copy is not at all the same when referring legislation as when initiating it. In the one instance, the voter presumably knows the law and is informed, except in cases where only a portion of the law is being referred, and, if not, can get exact information. In the other, presumptions are to the contrary. This distinction is recognized in the constitutional amendment itself; the section providing for initiative requiring an attached copy of the proposed law, which requirement is omitted from the section providing for a referendum.

Bearing upon the question of the construction of the statute, we have to consider also the language of the initiative and referendum amendment to the Constitution as follows: "This amendment shall be self-executing, but legislation may be enacted especially to facilitate its operation." Const., art. III, sec. 1D. Under this provision, legislation permissible must be such as frees the operation of the constitutional provisions from obstruction or hindrance. Any legislation which would hamper

or render ineffective the power reserved to the people would be unconstitutional. It is urged that a law which requires a 461-page book to be attached to each of 1,472 sheets, circulated for 20 names, is obstructive; that the expense and inconvenience of it would sometimes render practically, if not quite, impossible the reference of measures; that it is an absurd and unnecessary hardship, especially so when it is considered that those circulating the petition are, ordinarily, persons working voluntarily, without pay, in what they conceive to be the public interest. We are of opinion that in some cases at least this would be true, and that the law, as interpreted by the respondent, would be open to that objection. Of course, laws to prevent fraud "facilitate," because failure to prevent frauds would render the amendment itself objectionable as a means of legislation.

In view of the constitutional provisions and of our decision in *Bartling v. Wait, supra,* we have reached the conclusion that section 2337 is inapplicable to the form of the petition circulated; that it is unnecessary that each sheet for referendum petitioners' signatures have attached to it a true copy of the act; that in this particular it is a sufficient compliance with section 2337 that the referendum petition, taken as a whole, which includes all of the various sheets, have attached to it, when offered for filing, a full and correct copy of the measure. This was done in the instant case.

Laws to facilitate the operation of the amendment must be reasonable, so as not to unnecessarily obstruct or impede the operation of the law. A law requiring a full copy of a 461-page act to be attached to each sheet would be unreasonable and unnecessarily obstructive. In practice it has never been thought necessary, in submitting a law to the voters, that a full copy of it should be attached to the voter's ballot. Accordingly, section 2340 of the act requires the ballot title to contain only an impartial statement of the purpose of the measure to be prepared by the attorney general. Such legislation, for

the purpose of informing a referendum petitioner, may tend to facilitate the operation of the law. The people are conservative. In the absence of fraud, they will be inclined to vote "no" to a proposition which they do not understand and which purports to change existing laws.

The amendment under consideration reserves to the people the right to act in the capacity of legislators. The presumption should be in favor of the validity and legality of their act. The law should be construed, if possible, so as to prevent absurdity and hardship and so as to favor public convenience.

Relators in their brief devote an argument to the proposition that under our Constitution and laws the secretary of state is a ministerial officer, without power to exercise judicial functions, and that his duties relative to referendum petitions are strictly defined by statute. Of course, this is true; but, holding as we do that the petition should have been filed, we deem it unnecessary to enter into a discussion of this question, as applied to the facts and circumstances of the case in hand.

Respondent in his brief calls our attention to a provision in section 2339 of the statute, as follows, "Either party may appeal to the supreme court within ten days after a decision is rendered," and suggests that the action should be dismissed for want of jurisdiction. It appears that judgment was entered August 2; motion for a new trial overruled August 5; and transcript filed in this court August 19. It appears further that on October 24 the parties stipulated in this court that the case should be advanced for hearing "upon its merits." Afterwards, respondent procured time for preparing and filing briefs. We are of opinion that this suggestion, based upon a provision which is more or less in the nature of a statute of limitations, coming after stipulation for hearing upon the merits and after having subjected the opposing party to the costs incident to preparing briefs, may and should be disregarded. This question might have been raised by plea or motion to dismiss for want of jurisdiction,

State, ex rel. Ayres, v. Amsberry.

but was not. *Lloyd v. Reynolds,* 26 Neb. 63; *Patterson v. Woodland,* 28 Neb. 250.

The judgment of the district court is reversed.. It is further ordered that a writ of mandamus issue out of this court, requiring respondent, as secretary of state,˙to accept and file the referendum petition tendered, detaching sheets containing signatures, and otherwise proceeding in accordance with the statute and the law as laid down in this opinion.

ReVERSED.

Rose, J., dissents.

Letton, J., not sitting.

The following opinion on motion for rehearing was filed June 29, 1920. *Former judgment vacated, and appeal dismissed.*

1. **Appeal:** Jurisdiction. The supreme court has no power to exercise appellate jurisdiction in proceedings to review the judgments of the district court, unless a transcript is filed with the clerk of this court within the time prescribed by law for taking appeals.

2. ———: Time: Initiative and Referendum Act. In actions arising under the provisions of chapter 159, Laws, 1913, as amended by chapter 86, Laws 1919, appeals from the district court to the supreme court must be taken within ten days from the rendition of the judgment or final order in the district. court.

3. **Statutes:** Construction. "The word 'may' in public statutes should be construed as 'must' whenever it becomes necessary to carry out the intent of the legislature; but in all other cases this word, like any other, must have its ordinary meaning." *Kelly v. Morse,* 3 Neb. 224, followed.

4. **Appeal.** Record examined, and the case *held* to be an appeal from the judgment of the district court, and not an original action for mandamus in this court.

5. **Statutes:** Initiative and Referendum Act: Title. The title of the initiative and referendum act (Laws.1913, ch. 159) examined, and *held* sufficient to cover those provisions in the act relative to procedure in the district court and limitation of time for appeal, as such matters are found to be germane to the general subject, expressed in the title as "An Act to provide for carrying into effect the initiative and referendum," etc.

DAY, J.

In our former opinion in this case, *ante*, p. 273, the facts are sufficiently set forth to an understanding of the controversy, and need not be repeated here.

Upon our initiative a reargument has been had addressed solely to the question of the jurisdiction of this court. The respondent contends that we are without jurisdiction of the subject-matter, for the reason that no transcript of the proceedings was filed with the clerk of this court within the time prescribed by law, and that the filing of such transcript within the time prescribed is a necessary precedent to our jurisdiction. The respondent relies upon the provisions of the statute affecting appeals in cases arising under the act for carrying into effect the initiative and referendum powers reserved by the people (Laws 1913, ch. 159), and particularly upon a portion of section 5 thereof. This provision of the law is referred to in the argument as section 2339, Rev. St. 1913, which has been repealed by chapter 86, Laws 1919, retaining, however, the exact language found in the original section, viz.: "Either party may appeal to the supreme court within ten days after a decision is rendered." The order of the district court from which the appeal was taken was entered August 5, and the transcript of the proceedings filed with the clerk of this court on August 19 — some 14 days after the final order. In our former opinion we held that the question of jurisdiction might have been raised by a plea or motion to dismiss, but as this was not done, and the parties had stipulated to advance the case and try it "upon its merits," and the parties had gone to the expense of printing briefs, that the objection to the jurisdiction would be deemed to have been waived. In support of this view, we cited *Lloyd v. Reynolds*, 26 Neb. 63, and *Patterson v. Woodland*, 28 Neb. 250. Upon a reconsideration of the question of our jurisdiction, we have become convinced that the position taken in our former opinion is wrong. Except in the class of cases mentioned

in article VI, sec. 2 of the Constitution, wherein original jurisdiction is conferred on this court, it exercises appellate jurisdiction only, and appellate jurisdiction of the subject-matter can only be conferred in the manner provided by statute, and cannot be conferred by stipulation of the parties. The question of the jurisdiction of this court where the transcript was not filed within the prescribed time for taking an appeal has been several times before this court. In *French v. English,* 7 Neb. 124, the transcript was not filed within the period prescribed for taking appeals, and a motion to dismiss for want of jurisdiction was sustained. To the same effect, see *Clark v. Morgan & Co.,* 21 Neb. 673; *Patterson v. Woodland,* 28 Neb. 250; *Record v. Butters,* 42 Neb. 786; *Renard v. Thomas,* 50 Neb. 398. In *Allis v. Newman,* 29 Neb. 207, the failure to file the appeal within the time prescribed was due to the fault of an officer of the court. The motion to dismiss was overruled, the court saying that a party will not be permitted to suffer through the omission of an officer of the court. This case was later disapproved in *Stull v. Cass County,* 51 Neb. 760. In that case the transcript was not filed within the time prescribed. The attorneys for the respective parties stipulated: "All objections as to service of this bill of exceptions out of time and filing of same in supreme court after one year since trial of case are waived, as court reporter was unable to furnish it in time for regular service and filing in supreme court in the time required, and at time of service was mislaid by the county attorney and found today." The case was dismissed for want of jurisdiction. The court in commenting upon the stipulation used this language:

"The foregoing did not excuse the failure to file a certified transcript of the pleadings and judgment within the statutory period, since it only purported to waive the filing of the bill of exceptions out of time. Moreover, jurisdiction of the subject-matter cannot be conferred by the stipulation or agreement of parties. The

statute is mandatory as regards the time of taking appeals and proceedings in error, and the time for doing so cannot be extended by agreement of the parties. * * * We are aware that this statement is opposed to *Allis v. Newman,* 29 Neb. 207, but the decision therein is in conflict with the numerous adjudications of this court in other cases. See *Sturtevant v. Wineland,* 22 Neb. 702; *Schuyler v. Hanna,* 28 Neb. 601; *Omaha Loan & Trust Co. v. Ayer,* 38 Neb. 891; *Fitzgerald v. Brandt,* 36 Neb. 683; *Moore v. Waterman,* 40 Neb. 498; *Record v. Butters,* 42 Neb. 786; *Renard v. Thomas,* 50 Neb. 398. The decisions in these cases are followed, and that in *Allis v. Newman, supra,* disapproved."

In *Kock v. State,* 73 Neb. 354, the transcript was not filed within the statutory time allowed for appeals. The question of jurisdiction was raised in the brief. In commenting upon the question of jurisdiction the court said:

"So it is clear that we are without any jurisdiction to review the proceedings and judgment of the trial court herein. This is to be regretted, for the reason that the sentence in this case seems so excessive, considering the value of the property alleged to have been stolen, as to be almost unconscionable. If we were at liberty to assume jurisdiction of this case, we would, under the power given us by section 509a of the Code, reduce the sentence to a period of two years. Having no jurisdiction, we cannot grant the accused any relief, and he must resort to executive clemency."

In the case of *Dirksen v. State,* 86 Neb. 334, briefs were filed by both parties. The court of its own motion dismissed the proceedings in error because the transcript was filed after the time limited by law. It will thus be seen that we have uniformly held that jurisdiction of the subject-matter cannot be conferred by stipulation or consent of the parties, nor does the filing of briefs constitute a waiver. Nothing but the filing of a transcript in this court within the time prescribed can vest this court with jurisdiction of the subject-matter.

No stipulation. consent, or waiver of the parties can take the place of the filing of the transcript. The case of *Patterson v. Woodland,* 28 Neb. 250, cited in our former opinion, is an authority supporting this opinion In that case, it was said: "As the transcript and petition in error were filed after the expiration of a year from the rendition of the judgment, the right to prosecute error had ceased."

*Lloyd v. Reynolds,* 26 Neb. 63, is readily distinguishable from the present case. In that case the transcript and petition in error were filed within the year (the time then prescribed), and the court would have jurisdiction of the subject-matter. After the year expired the parties stipulated waiving the issuance and service of summons. It was said: "The transcript and petition in error were properly filed in the court within the year, and the defendant could lawfully enter his appearance herein after the expiration of that time."

In *Fromholz v. McGahey,* 85 Neb. 205, it is said: "We have uniformly held that filing an unauthenticated transcript of a judgment of the district court did not give us jurisdiction of the controversy, but that the terms of the statute must be observed and a *certified* transcript of the judgment filed within the time limited by law." See, also, *Snyder v. Lapp,* 59 Neb. 243; *McDonald v. Grabow,* 46 Neb. 406; *Moore v. Waterman,* 40 Neb. 498. While it is a fact that in a few cases decided since the doctrine of *Allis v. Newman* was overruled it has been intimated that the default of an officer of the court might warrant an extension of time for filing an appeal, an examination of these cases discloses that such statements are merely inadvertent expressions and pure dictum, and it may further be said that since the decision in *Stull v. Cass County,* 51 Neb. 760, no appeal has ever been held in this court, unless the transcript was filed within the statutory time. To hold otherwise would be illogical. There is in this case no pretense that the relator was prevented from filing his transcript by the fault of any officer of the court.

The next question which suggests itself is whether the time of taking the appeal is to be governed by the provisions of chapter 159, Laws 1913, as amended by chapter 86, Laws 1919, which is the special statute relating to cases arising under the initiative and referendum act, or is it to be governed by section 8186, Rev. St. 1913, as amended by chapter 140, Laws 1917, which is the general statute relating to appeals. If the former, the appeal must be perfected in ten days, provided the word "may" as used therein means "must." If the latter, the appellant is given three months in which to appeal. That the legislature, by this act relating to the initiative and referendum, intended to prescribe a complete method of putting into practical effect the constitutional provision relating to the initiative and referendum, there can be no reasonable doubt. The language is clear and unambiguous. The act sets forth in detail the necessary steps to be taken to carry out its provisions. It provides that, if the secretary of state shall refuse to accept or file the petition, "any citizen may apply, within 10 days after such refusal, to the district court for a writ of mandamus; * * * that the district court of Lancaster county shall have jurisdiction of all litigation arising under the provisions of this act;" that such suits shall be advanced on the court docket and decided by the court as quickly as possible; and that "either party may appeal to the supreme court within 10 days after a decision is rendered." By this act ample provision is made for the protection of the citizen in every constitutional right, and if, as in this case, he has not complied with the terms of the law, the fault is his, and not of the law. This expression of the legislative will is binding on the court as well as the citizen, and cannot go unheeded without legal justification. It is a recognized principle, approved by this court, that when a new right is created by act of the legislature, and a new remedy is created by the same act, applying to the same subject, the remedy so prescribed is exclusive. *Swaney v. Gage County*, 64 Neb.

627.  One of the purposes of the act was to provide an adequate and speedy method of testing in the court any legal obstacles which might be urged against the submission of an act of the legislature to the initiative and referendum.  To give it practical effect, it was necessary to place limitations upon the time within which the action could be brought, and within which appeals could be taken.

The relators seek to avoid the effect of the provision of the statute, "Either party may appeal to the supreme court within ten days after a decision is rendered," by urging that the word "may," as used therein, is permissive, and not mandatory.  In view, however, that this provision relates to matters for carrying out the provisions of the initiative and referendum laws — which of necessity must be voted upon at fixed dates — and the further fact that the act provides that "all such suits shall be advanced on the court docket and heard and decided by the court as quickly as possible," convinces us that it was the intention of the legislature that such suits should be speedily determined and to aid this purpose the time in which an appeal could be taken to the supreme court was limited to ten days.  This legislative intent can best be carried out by construing the word "may" as "must," and as imposing a duty rather than conferring a privilege.  If it is to be construed in the sense of a permissive act, we can see no useful purpose which the clause quoted subserves.  Under the general law pertaining to appeals, the party appealing has three months in which to file his transcript, but he may file it at any time after the judgment within the three months' period.  The legislature undoubtedly had some purpose in putting into the section the clause quoted, and we have no doubt that the purpose was to limit the time in which the appeal could be taken in cases arising under the provisions of this chapter.  In *Kelly v. Morse*, 3 Neb. 224, it is said: "The word 'may' in public statutes should be construed as 'must' whenever it becomes

necessary to carry out the *intent* of the legislature; but in all other cases this word, like any other, must have its ordinary meaning." *State v. Farney,* 36 Neb. 537.

The relators also contend that this court has jurisdiction of the subject-matter by virtue of its powers of original jurisdiction in cases of mandamus. While it is true that this court is given original jurisdiction in mandamus, it is also true that the district court has concurrent jurisdiction in that class of cases, and that from the judgment of the district court an appeal lies to this court. The real question here is whether this is an appeal from the judgment of the district court, or an original action in this court. All of the proceedings of the district court are set out in the transcript, including the judgment, overruling of the motion for new trial, and the settling of a bill of exceptions. The case is docketed in this court as an appeal. There is no application for a writ to issue from this court, which would be the practice if this were an original case, and nowhere, except in the argument, is there any pretense of invoking the original jurisdictional powers of this court. As we view it, there is no question but that this action invokes the appellate jurisdiction of this court, as distinguished from its original jurisdiction.

It is urged by relators that the provision of the statute above quoted, limiting the time in which an appeal should be taken, is unconstitutional, for the reason that the title of the act was not broad enough to cover that provision.

The title is as follows: "An Act to provide for carrying into effect the initiative and referendum powers reserved by the people in sections 1, 1A, 1B, 1C, and 1D of article III of the Constitution of the state of Nebraska; to regulate elections thereunder; to provide for a publicity pamphlet; to make it a felony to violate certain provisions of this act and to provide penalties therefor."

It is apparent that the law proposed had one general subject, and that subject is clearly expressed in the title — legislative provisions to provide necessary machinery for carrying into effect the initiative and referendum. The constitutional limitation, that no bill shall contain more than one subject, which shall be clearly expressed in the title, does not require an enumeration in the title of all the different matters germane to that subject which must necessarily be covered in the body of the act. The title of the act is not intended to serve as an index to the contents, but only as an indication of the general object sought, and it is implied that matters incidental to that object will necessarily be covered. The title in this instance, declaring the purpose of the act to be the carrying into effect the initiative and referendum provisions of the Constitution, sufficiently covers those provisions of the act providing for court procedure to determine the validity of referendum petitions, and therefore all the various details of that procedure, including the provision for filing appeal within ten days. The procedure provided is incidental and germane to the general object sought to be attained. *Cathers v. Hennings,* 76 Neb. 295; *State v. Power,* 63 Neb. 496; *Stewart v. Barton,* 91 Neb. 96; *State v. Ure,* 91 Neb. 31; *Robinson v. Kerrigan,* 151 Cal. 40; *Gay v. District Court,* 41 Nev. 330, 3 A. L. R. 224; *People v. Crissman,* 41 Colo. 450; *Adams v. Iten Biscuit Co.,* 162 Pac. (Okla.) 938; 36 Cyc 1017.

It follows from what has been said that our former judgment should be vacated, and the appeal dismissed for want of jurisdiction.

FORMER JUDGMENT VACATED, AND APPEAL DISMISSED.

ALDRICH, J., dissents.

DEAN, J., dissenting.

The sole question before us now is whether a constitutional amendment that was adopted in 1913, and that made the initiative and referendum principle of govern-

ment a part of the Constitution, shall be enforced, or whether that principle, so far as it relates to the present case, shall be destroyed by judicial construction of a part of an act of the legislature. The decision here cannot of course be concerned as to whether the subject out of which this controversy arose is in line with progressive legislation or otherwise. To the writer the former opinion, as written by the late Judge Cornish, with its conclusion seems fairly to interpret the language of the constitutional provision in question, and with that I am content. That opinion speaks for itself.

This is a proceeding in mandamus in which the district court and the supreme court are by the Constitution clothed with concurrent jurisdiction. Hence, under the facts in the present case, the question of jurisdiction may not be of so supreme and controlling importance, except in a technical sense, as may perhaps be made to appear in the opinion of the majority. This dissent is not based on the ground of concurrent jurisdiction. There seems to be controlling force, however, in the suggestion that the ten-day provision for appeal in chapter 159, Laws 1913, as amended by chapter 86, Laws 1919, is not exclusive, but is merely cumulative. Section 8186, Rev. St. 1913, as amended by chapter 140, Laws 1917, provides generally that an action may be appealed in three months, but it does not of course prevent an appeal from being perfected in ten days or in any number of days within three months. Except on the clearest ground, the court should not dismiss an action for want of jurisdiction of the subject-matter, and especially when a constitutional question is involved wherein the people have reserved the "power at their own option to approve or reject at the polls any act, item, section, or part of any act passed by the legislature." Const., art. III, sec. 1.

Subsequent to the adoption of the present Constitution, and from time to time as need arose, amendments were added which contain no language that is not clear

and easily understood. Notwithstanding argument to the contrary, there is no room in a Constitution for language of double or doubtful meaning. In this· respect a Constitution is unlike some legislative acts. At times they contain subjects that are not clearly, or not at all, referred to in the title, and therefore remain undiscovered by the public until brought to light in court proceedings. Sometimes they change existing law without notice. The present case may illustrate the point.

Subjects that are undisclosed in the title of a legislative act are called "jokers." There are no "jokers" in a Constitution. It obeys the scriptural injunction. Its language is: "Yea, yea; and nay, nay." A "joker" is sometimes the offspring of a careless or a trustful legislature, and therefore it at times finds its way into an act by chance or by accident. Plainly speaking, there are two "jokers" in the act here in question. Both are referred to in this dissent, though but one is directly involved here, merely to show "a continuing course of conduct." One reads: "The district court of Lancaster county shall have jurisdiction in all cases of laws, parts of laws or initiative amendments to the Constitution with amendments to be submitted to the electors of the state at large." Laws 1913, ch. 159, sec. 5 (Rev. St. 1913, sec. 2339). With respect to the above-quoted language, it may be observed that it does not clearly appear by what constitutional right or authority the legislature presumes at all to confer jurisdiction of the subject-matter herein upon one district court to the apparent exclusion of all other district courts. It is obvious that the intention was to confer exclusive jurisdiction; otherwise the act would have been silent on this point. But, altogether aside from that, the question respecting jurisdiction is an independent "subject." Will it be contended that it is "clearly expressed in the title" or that it is at all referred to therein? If the right so to confer jurisdiction and so to legislate can be found in any lan-

104 Neb.—19

guage in the Constitution, my attention has not been directed thereto.

The other reads: "Either party may appeal to the supreme court within ten days after a decision is rendered." That sentence covers the subject in the act that is directly involved here, and, unless it may be held to be "cumulative," the statute in which it occurs seems clearly to violate this language of the Constitution, namely: "No bill shall contain more than one subject, and the same shall be clearly expressed in its title. And no law shall be amended unless the new act contain the section or sections so amended and the section or sections so amended shall be repealed." Const., art. III, sec. 11.

The title of the act under discussion follows: "An act to provide for carrying into effect the initiative and referendum powers reserved by the people in sections 1, 1A, 1B, 1C, and 1D of article III of the Constitution of the state of Nebraska; to regulate elections thereunder; to provide for a publicity pamphlet; to make it a felony to violate certain provisions of this act and to provide penalties therefor." The title refers to the regulation of elections; to the provision for the issuance of publicity pamphlets; to the provision that makes a violation of the act a felony and that a penalty is provided. But no reference is made in the title, by number or otherwise, to chapter 140, Laws 1917, that being the general law regulating appeals, and which the act in question purports to amend. The latter act provides that an appeal may be prosecuted to the supreme court in three months. The act in question provides for a reduction in time, for an appeal in this class of cases, to a period of ten days, and this it does without at all referring to chapter 140, Laws 1917. A new "statute of limitations" by the amendment of an important "practice act" is created without any reference thereto in the title and without any reference thereto in the body of the act. There is nothing in the title to

notify the members of the legislature or the public that another act is amended in a most important feature.

In view of the waiver of jurisdiction, entered into by the parties hereto prior to the former decision, it is doubtful if the distinguished counsel on either side knew of or were advised of the ten-day amendment until after, the appeal was well along and was about to be argued. I do not agree with the statement in the opinion of the majority, namely:. "It is apparent that the law proposed had one general subject, and that subject is clearly expressed in the title."

As pointed out in the former opinion, the case was advanced for hearing upon the merits. Afterwards, respondent procured time for preparing and filing briefs. In that state of the record we held that, the relator having been subjected by the respondent to the costs incident to preparing briefs and the like, the motion to dismiss should be disregarded. *State v. Amsberry, ante,* p. 273. Our conclusion and the opinion then adopted were right, and even if not based strictly on all of the grounds therein stated, as now held by a majority of the court, then on other grounds that cover the issues involved and that appear to be sound.

. The Constitution provides: "This amendment shall be self-executing, but legislation may be enacted especially to faciliate its operation." Const., art. III, sec. 1D. The imperative "shall" and the permissive "may" as used in the same sentence are significant. They appear to have been used in their ordinary and popular sense, and, as though by the foresight of a seer, with the view of hedging about with safeguards the vital principle of the "initiative and referendum" and of preserving its "self-executing" feature, to the end that the principle itself be not destroyed. Until that supreme law, so adopted, is modified by its masters, its command is supreme, and of course must be obeyed by all persons alike. The Constitution of a state is the composite voice and the supreme law of its people. From time immemorial

it has been said that the voice of the people is the voice of God. Out of this sentiment in part no doubt has grown the reverence of our people for a Constitution.

The application of the principle of the initiative and referendum to the affairs of government is comparatively new. There are those who say it is only an experiment in self-government that has not yet been tried out, and that not all are agreed as to its merits. Even so, that question cannot be decided here. Except on the clearest ground there should be no deprivation of the people's right to the constitutional "power" that they "reserve to themselves * * * at their own option to approve or reject at the polls any act, item, section, or part of any act passed by the legislature." Const., art. III, sec. 1. They were not so deprived in the former opinion. Hence, I dissent from the present opinion of the majority.