JOHN C. KLOSTERMAN, APPELLEE, V. FRANK MARSH, AS SECRETARY OF STATE OF THE STATE OF NEBRASKA, APPELLANT.

143 N. W. 2d 744

Filed July 1, 1966. No. 36361.

Clarence A. H. Meyer, Attorney General, and Gerald S. Vitamvas, for appellant.

Bernard S. Gradwohl, for appellee.

Heard before CARTER, 'SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and COLWELL, District Judge.

McCOWN, J.

This is an action to enjoin the Secretary of State from permitting L.B. 797 of the 1965 Legislature, the Income Tax Act, Laws 1965, chapter 465, page 1476, to be placed on the ballot and referred to the electorate for approval or rejection at the 1966 general election. The district court enjoined the Secretary of State from certifying the title and text of L.B. 797 to the election officials or in any other manner causing the same to be referred to the electorate. This appeal followed.

On June 22, 1965, the 75th Session of the Nebraska Legislature passed L.B. 797 providing for Nebraska's first state income tax. It became law on July 1, 1965, without the signature of the Governor. On July 23, 1965, a form of referendum petition to be used for circulation was filed with the Secretary of State to refer L.B. 797 to the electors of the state for their approval or rejection. Four days later, on July 27, 1965, L.B. 932, Laws 1965, chapter 467, page 1509, was introduced on first reading. On August 5, 1965, L.B. 932 was amended to provide that it was to amend section 1 (1) of L.B. 797. On August 16, 1965, L.B. 932 was passed by the Legislature. The Legislature adjourned sine die on August 17, 1965. On August 18, 1965, L.B. 932 was approved by the Governor. L.B. 932 was not included in or made a part of the referendum petition against L.B. 797.

On September 29, 1965, a referendum petition and the required affidavit as to persons contributing money or other things of value in connection with the referendum petition were filed, and on November 15, 1965, addi-

tional certificates and a supplemental statement were filed. On December 13, 1965, the Secretary of State certified that sufficient signatures had been properly filed in accordance with Article III, section 3, of the Constitution of Nebraska, and section 32-704, R. R. S. 1943, to refer L.B. 797 to the electors of the state. The Secretary of State found 82,132 valid signatures which were more than the 5 percent requirement of the Constitution of Nebraska (28,905), and also more than the 10 percent required to suspend the taking effect of such act and showed the required distribution among counties.

A number of the petition signers actually signed petitions on or before August 17, 1965. It is conceded that if these signatures obtained prior to August 17, 1965, are invalid as a class, there would be an insufficient number of counties having a 5 percent total to meet the constitutional requirements.

L.B. 932 changed a part of subsection (1) of section 1 of L.B. 797 by deleting a portion of a sentence which provided, in effect, that the income of a cooperative should be considered its net income before any payments obligated or paid as dividends or patronage refunds. It substituted for the deleted part a provision which permitted deduction of patronage dividends, as specified, in determining the net income of a cooperative. This constituted the entire effect of L.B. 932. The evidence introduced by the plaintiff showed that there were 369 cooperatives headquartered in Nebraska, and more than 278,600 members of the Nebraska cooperatives, and that the annual business transacted by cooperatives in Nebraska is very substantial.

The right of the people to exercise the initiative and referendum is specifically reserved to them in Article III, section 1, of the Constitution of Nebraska, in part: "The people reserve for themselves, however, the power to propose laws, and amendments to the constitution, and to enact or reject the same at the polls, independent of the Legislature, and also reserve power at their own option

to approve or reject at the polls any act, item, section, or part of any act passed by the Legislature."

Article III, section 3, of the Constitution of Nebraska, specifically applies to the referendum. "The second power reserved is the referendum which may be invoked, by petition, against any act or part of an act of the Legislature, except those making appropriations for the expense of the state government or a state institution existing at the time of the passage of such act. Petitions invoking the referendum shall be signed by not less than five per cent of the electors of the state, distributed as required for initiative petitions, and filed in the office of the Secretary of State within ninety days after the Legislature at which the act sought to be referred was passed shall have adjourned sine die or for more than ninety days. Such petition shall set out the title of the act against which the referendum is invoked, and in addition thereto, when only a portion of the act is sought to be referred, the number of the section or sections or portion of sections of the act designating such portion. When the referendum is thus invoked, the Secretary of State shall refer the same to the electors for approval or rejection at the first general election to be held not less than thirty days after the filing of such petition.

"When the referendum is invoked, as to any act or part of act, other than emergency acts or those for the immediate preservation of the public peace, health or safety, by petition signed by not less than ten per cent of the electors of the state, distributed as aforesaid, it shall suspend the taking effect of such act or part of act until the same has been approved by the electors of the state."

Article III, section 4, of the Constitution of Nebraska, specifically provides in part: "The provisions with respect to the initiative and referendum shall be self-executing, but legislation may be enacted to facilitate their operation."

Section 32-702, R. R. S. 1943, requires that the form of referendum petition shall be substantially as specified in that section. The statutory form requires a concise statement in large type of the legal effect of the filing of the petition and the objective sought to be secured by submitting the measure to the voters. The statutory form reads in part: *"Legislative Bill* No. ——, entitled (title of act, and if the petition is against less than the whole act then set forth here the part or parts on which the referendum is sought), * * *." (Emphasis supplied.)

Section 32-704, R. R. S. 1943, provides: "Upon each sheet for petitioners' signatures shall be printed a full and correct copy of the title and text of the law or amendment to the Constitution so proposed or the measure sought to be referred to the electors by the initiative or referendum petition, as the case may be, * * *. Prior to obtaining any signatures to the petition, a copy of the form to be used shall be filed with the Secretary of State, * * *."

This is apparently a case of first impression on the specific factual situation presented. It involves a situation in which the Legislature passed a legislative bill embodying a complete act. Circulation of a referendum petition against that act was commenced after the passage and adoption of the bill, but before the adjournment of that session of the Legislature. The Legislature then introduced and passed a separate bill amending a part of one section of the original bill. The referendum petition against the original act was not changed and was then completed and filed after the amendment and after the adjournment of that session of the Legislature. We have been cited to no cases directly in point from this or any other jurisdiction.

The plaintiff contended and the lower court determined that the Constitution contemplates that the proceedings of the Legislature and the operation of the referendum proceedings shall be consecutive and not

concurrent legislative processes, and that the power to refer legislation can be construed consistently only if referral is delayed until final action of the Legislature on any particular legislative proposal. To the extent this conclusion implies that the legislative power of initiative and referendum reserved to the people and the legislative authority granted to the Legislature may not be exercised concurrently, we disagree. Both the initiative and the referendum involve the exercise of legislative power reserved to the people by the Constitution. The initiative is in no sense limited as to the time of its exercise. Neither are initiated laws limited to matters on which the Legislature has not acted. By the initiative process, the people may amend or even expressly repeal laws already enacted by the Legislature. By the referendum, the people may also reinstate an act which the Legislature has expressly repealed.

Under Nebraska constitutional provisions vesting the legislative power of the state in the Legislature, but reserving to the people the right of initiative and referendum, the Legislature, on the one hand, and the electorate on the other, are coordinate legislative bodies, and there is no superiority of power between the two. In the absence of specific constitutional restraint, either may amend or repeal the enactments of the other. See, 28 Am. Jur., Initiative, Referendum and Recall, § 45, p. 469; Annotation, 33 A. L. R. 2d 1118 at p. 1121, and cases there cited. The time and effect of the exercise of legislative power by the Legislature on the one hand and by the people on the other, and their consequent inter-effect pose the problem here.

In effect, the plaintiff's position is that under the Constitution, no act of the Legislature is complete or final for purposes of the referendum until the Legislature adjourns. To reach this result, the plaintiff relies on the language of Midwest Popcorn Co. v. Johnson, 152 Neb. 867, 43 N. W. 2d 174: "The Legislature during a session may do and undo, consider and reconsider, as

often as it thinks proper, as only the final result will be regarded as the thing done." This is a statement as to legislative power and the effect of its exercise. The real question is: When is an act final in the sense that it is an "act of the Legislature" against which the referendum may be invoked? It seems to us that the Constitution itself answers the question. Article III, section 1, reserves the power of the referendum as to "any act, item, section, or part of any act *passed by the Legislature."* Article III, section 3, specifically applying to the referendum grants the power against "any act or part of an act of the Legislature, except those making appropriations for the expense of the state government or a state institution, existing *at the time of the passage of such act."* Article III, section 14, applying to legislative bills, refers to *"final passage."* Article III, section 27, provides "No *act* shall take effect until three calendar months after the adjournment of the session at which it *passed,* unless in case of emergency, * * *." (Emphasis supplied.) The right of referendum under our Constitution extends even to emergency acts which go into effect immediately, except that a referendum cannot suspend the taking effect of an emergency act.

Ordinarily "act" means "a bill which has been enacted by the Legislature into a law." See 82 C. J. S., Statutes, § 115, p. 193. There is no suggestion anywhere in our Constitution that the right of referendum was intended to be applied to a general principle of law, nor even to a specific principle of law except as embodied in a specific act of the Legislature. A thorough examination of the constitutional provisions, and the statutory provisions of the enabling and facilitating legislation leads us to the conclusion that an "act of the Legislature" under Article III, section 3, means a particular legislative bill which has been passed by the Legislature and becomes law, either by the necessary passage of time for veto, or by the signature of the Governor. At that point it is an enactment and becomes an "act of the

Legislature." It is final in the sense that it is done and completed, although an act of the Legislature is not final in the sense that the same or any subsequent Legislature may not change, amend, modify, or even completely repeal it. In such a sense, few acts of a Legislature are ever final. From the time it becomes a law, it can only be changed, amended, modified, or repealed by a separate legislative act.

Constitutional provisions with respect to the right of initiative and referendum reserved to the people should be construed to make effective the powers reserved. The case of State ex rel. Ayres v. Amsberry, 104 Neb. 273, 177 N. W. 179, although later vacated on procedural grounds stated: "The amendment under consideration reserves to the people the right to act in the capacity of legislators. The presumption should be in favor of the validity and legality of their act. The law should be construed, if possible, so as to prevent absurdity and hardship and so as to favor public convenience." The court later said: "Any legislation which would hamper or render ineffective the power reserved to the people would be unconstitutional."

The plaintiff specifically contends that signatures to a referendum petition may not be validly secured prior to the adjournment of the legislative session at which the referred act was passed. This rests on the interpretation of one sentence in Article III, section 3, Constitution of Nebraska, which reads: "Petitions invoking the referendum shall be signed by not less than five per cent of the electors of the state, distributed as required for initiative petitions, and filed in the office of the Secretary of State within ninety days after the Legislature at which the act sought to be referred was passed shall have adjourned sine die or for more than ninety days." The plaintiff contends this sentence requires that petitions must be signed, as well as filed, within 90 days after adjournment and, therefore, they may not be signed before adjournment. A reading of this sen-

tence in context would indicate that the time limitations were intended to refer only to a cut-off date after which no referendum petition could be filed and was not intended to fix the date that the right of referendum became exercisable, nor the date before which signatures could not be validly obtained. We do not find it necessary to go outside the language of the constitutional provision itself. We hold that signatures on a referendum petition obtained after the act sought to be referred was passed are not rendered invalid merely because they were obtained before the adjournment of the legislative session at which the act was passed.

The Constitution requires that the referendum petition set out the title of the act. Section 32-704, R. R. S. 1943, requires a full and correct copy of the title and text of the measure sought to be referred. The plaintiff contends that because the title of L.B. 797 does not reflect the subsequent and separate title of L.B. 932, and because the text of section 1 of L.B. 797 does not reflect the amendment made by L.B. 932, therefore, the referendum petition did not contain a full and correct copy of either the title or the text of the act or measure sought to be referred.

With respect to what must be set out in the petition, the framers of the Constitution specifically distinguished between an initiative petition and a referendum petition. The Constitution provides that with respect to an initiative petition "the proposed measure shall be set forth at length." With respect to the referendum, the Constitution requires only that the petition shall "set out the title of the act against which the referendum is invoked * * *" unless it is against only a portion of an act, in which case, the number of the section or sections is required to be set out. It is unmistakable that where an entire act of the Legislature, rather than only a portion of it, is referred, the constitutional convention determined that only the title was sufficient. The reason for the differentiation is likewise clear. In the case of

the referendum, the bill has been before the Legislature and is known all through its legislative course by its title. The Constitution requires that the title shall clearly reflect what is in the bill. In State ex rel. Ayres v. Amsberry, *supra*, this court also pointed out the distinction between the initiative and the referendum as to this point in the following language: "It is to be observed that to secure intelligent petitioning the need for an attached copy is not at all the same when referring legislation as when initiating it. In the one instance, the voter presumably knows the law and is informed, except in cases where only a portion of the law is being referred, and, if not, can get exact information. In the other, presumptions are to the contrary."

In this case, had all the provisions of L.B. 932 been included in L.B. 797 at the time of the passage and adoption of L.B. 797, no change would have been required in the title of L.B. 797. Here a full and correct copy of the title of L.B. 797 was on the petition and each sheet of it. Under such circumstances, the title of the act set out in the referendum petition here was sufficient and in compliance with constitutional and statutory provisions.

The referendum petition here also included the full and correct copy not only of the title, but also of the text of L.B. 797 as passed. The only requirement that the text of the measure sought to be referred shall be set out in full is in section 32-704, R. R. S. 1943. That statute applies to both initiative and referendum petitions without regard to the distinctions between them made by the Constitution. Without passing on the constitutionality of that statute with respect to requiring the petition to set out the complete text of the "act" in the case of the referendum, we hold that it was not mandatory to include the text of the amendment made by L.B. 932 where only L.B. 797 was being referred.

In this case we are not faced with the problem of a referendum petition against a specific legislative act in

which changes or amendments made by the Legislature in a subsequent amending act might be such as to make them, inseverable. Nor is this a case where the later amendment was so major and extensive as to make the issue to be presented to the voters unintelligible or so misleading as to be unfair or constitute fraud. Neither is this a case in which rejection of the act under referral by the voters would create confusion or upset the orderly process of legislation.

For the reasons stated, the referendum petition against L.B. 797 here involved was proper and sufficient. The judgment of the district court is reversed and the action dismissed.

REVERSED AND DISMISSED.