REQUESTED BY: Dear Senator:
You have asked for our opinion on three amendments that you might offer this session for the purpose of amending LB 532, section 45, Eighty-fifth Legislature, Second Session, 1977.
In your first proposed bill amendatory language in section 1 is:
 "No school district shall receive less state financial assistance per pupil under section 2 of this act for the 1977-1978 school year than such district received pursuant to sections 79-1330 to 79-1344 and 79-4,160 to 79-4,168 for the 1976-1977 school year."
In section 2, subsection (3), your amendment contains the following new language:
 "There is included in the amount shown $49,600,000 General Funds which are appropriated to the School Foundation and Equalization Fund, which fund is hereby appropriated and $8,900,000 General Funds for distribution by the State Department of Education to meet the requirements of section 1 of this act."
In your second proposal section 1 contains the following new language:
 "No school district shall receive less state financial assistance per pupil for the 1977-1978 school year than such district received on a per pupil basis for the 1976-1977 school year."
In section 2(3) you include the following language:
 "There is included in the amount shown $45,000,000 General Funds which are appropriated to the School Foundation and Equalization Fund, which fund is hereby appropriated and $12,500,000 General Funds for distribution under sections 79-4,160 to 79-4,168, Reissue Revised Statutes of Nebraska, 1943, and amendments thereto."
Section 3 of both proposals allows the Department of Education to recompute payments to be made this fiscal year. We will treat each of your proposals together for purposes of this discussion.
In both cases the proposed bill contains an emergency clause.
Your third proposed draft is identical to a bill introduced by Senator Lamb, LB 638. We refer you to the copy of our opinion to Senator Lamb enclosed with this letter in answer to that question.
You ask that we review your proposals with a view toward any constitutional problems that may exist.
By way of general explanation, the problem arises by virtue of the fact that the Legislature adopted LB 33 last year which was intended to amend the sections of law currently controlling the distribution of state aid to local school districts. In addition, LB 33 increased the amount of state aid to be given to local school districts by $20,000,000 for fiscal year 1977-1978. Of course that portion of LB 33 dealing with the amount of money to be provided for state aid was not an appropriation but simply an allocation. LB 532, in section 45, then appropriated $55,000,000 to the School Foundation and Equalization Fund and additionally appropriated $20,000,000 for the purposes of LB 33. Those purposes were for distribution under the School Foundation and Equalization Fund under the formulas contained in LB 33. Subsequently the referendum petition was circulated successfully and LB 33 was suspended pursuant to Article III, section 3 of the Nebraska Constitution. That resulted in the existing statutes remaining in effect during the interim period between the filing of the referendum petition and the general election to be held in November of 1978. Those statutes provided for distribution of state aid to school districts under two formulas those contained in sections 79-1330 through 79-1344 and those contained in sections 79-4,160 through 79-4,168.
By previous opinions we have made clear that no appropriation was made for the purposes of sections 79-4,160 through 79-4,168. Subsequently the Department of Education in determining the allocations to be made discerned that $49,600,000 would fully fund the provisions of section79-1330 through 79-1344 thereby leaving an excess not to be expended during the current fiscal year of $5,400,000. In addition, several school systems as a result in part of not having any funds appropriated for the purposes of sections 79-4,160 through 79-4,168 have received or will receive less money from the State Department of Education this year than they have in the past years. Of course, that same prospect would exist even if money had been appropriated for the purposes of section 79-4,160 through 79-4,168, in that a variety of factors under the formulas existing affect the amount of money to be received by any school district including such things as reevaluation of property values within the district, decreases or increases in the size of the student enrollment and the qualifications of the faculty and income received from other sources than state aid. In fact, it may be said safely that the amount of money any school district will receive in any particular year will vary under any formula that may be established. At least in part the proposals that you have provided our office for review would establish a new formula for the distribution of state aid. To a limited extent this raised some question about whether or not this alteration substantially affects the referendum vote on LB 33 which also contains a new formula.
In your proposal number one, $49,600,000 is appropriated to the Foundation and Equalization Fund and $8,900,000 to be distributed under the `hold harmless provision' of section 1. In your second proposal $45,000,000 and $12,500,000 are appropriated for the same purposes. Thus, the proposals result in an expenditure of $3,500,000 and $2,500,000 respectively above the $55,000,000 presently appropriated by LB 532. To this extent the appropriations take the character of a deficit appropriation and require the appropriate majority for passage. These increases over the $55,000,000 presently appropriated raise the question of whether or not they violate Article III, section 3 of the Constitution of the State of Nebraska in that at least a portion of the referendum on LB 33 involves the question of increased state aid to local school districts.
It is our opinion that both of these questions may be analyzed by reference to the prohibitions set forth by the Nebraska Supreme Court in Klosterman v. Marsh, 180 Neb. 506,143 N.W.2d 744 (1966).
 "In this case we are not faced with the problem of a referendum petition against a specific legislative act in which changes or amendments made by the Legislature in a subsequent amending act might be such as to make them inseverable. Nor is this a case where the later amendment was so major and extensive as to make the issue to be presented to the voters unintelligible or so misleading as to be unfair or constitute fraud. Neither is this a case in which rejection of the act under referral by the voters would create confusion or upset the orderly process of legislation."
In addition to these prohibitions announced inKlosterman v. Marsh, the court in that case did recognize that the legislative power and the referendum power may be concurrently exercised by the Legislature and the people. The court also recognized that the Legislature is not precluded from acting in an area while that particular subject matter is awaiting a referendum vote. Therefore, recognizing the undoubted legislative power to take some actions we must analyze the particular proposals that you forward to see if they run afoul of any of the prohibitions set forth in Klosterman.
Neither draft directly amends LB 33. They do, however, alter the amount of money available for distribution to school systems by the Department of Education for this fiscal year, 1977-1978. To that extent they change, amend or affect that portion of LB 33 dealing with the amount of state aid to be provided to local school systems. Proposed increases of $3,500,000 and $2,500,000 are inseverable from the provisions of LB 33 authorizing an increase of $20,000,000. The proposals you have presented are not a situation where the Legislature is acting to overcome the objections raised by the referendum petition by altering the amount of increase. Where that is the case, different considerations might apply. However, at least in part the vote of the people is concerned with increasing state aid from $55,000,000 to some greater figure. To the extent that the Legislature attempts retroactively to authorize an increase of a lesser amount there can be little question but that there is an effect on the referendum.
To the extent that the proposals alter this formula they are questionable. Of course, your proposals also alter the distribution formula and to that extent do in some measure affect the power of the people to express their will by way of referendum.
The second prong of the analysis set forth inKlosterman requires a determination of whether the change is so major or extensive as to make the issue presented unintelligible or so misleading as to be unfair or fraudulent. This analysis is different from that required above in that any change made must be analyzed in terms of the extent of the effect the change will have on the matter subject to referendum. Here there is some change, to the extent of 2.5 or 3.5 million dollars. For purposes of this portion of the analysis set forth in Klosterman we simply point out that the change does exist and that the extent of the change, although difficult to characterize, is a change.
The final prong of the test we believe is not offered by your proposals in that it would not upset the orderly processes of legislation or create confusion.
For the reasons set forth above, it is therefore our opinion that both of your proposals would be in violation of Article III, section 3 of the Constitution. Under the test set out in Klosterman v. Marsh, the proposals would offend the right of the people to vote upon the method to be utilized in distributing state aid to education and the amount of state aid to education to be provided local school districts.