LIMIT; Sherry Bockwinkel, Plaintiffs,

v.

Norm **MALENG,** King County Prosecuting Attorney, in his Official Capacity, et al., Defendants.

No. C94–162R.

United States District Court, W.D. Washington, at Seattle.

Oct. 17, 1994.

James E. Lobsenz, Carney Badley Smith & Spellman, Seattle, WA, for plaintiffs.

Susan Nathalie Slonecker, Pros. Atty. of King County, Seattle, WA, Roger J. Miener, Pierce County Pros. Attorney's Office, Civ. Div., Tacoma, WA, James P. Emacio, Spokane County Prosecutor's Office, Spokane, WA, Thomas Herrick Robertson, Snohomish County Pros. Atty., Civ. Div., Everett, WA, John W. Hough, Atty. General's Office; David V. Klumpp, Thurston County Prosecutor's Office, Olympia, WA, and Randall J. Watts, Whatcom County Pros. Attorney's Office, Bellingham, WA, for defendants.

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

ROTHSTEIN, District Judge.

THIS MATTER comes before the court on plaintiffs' and defendants' cross-motions for summary judgment. Having reviewed the motions together with all documents filed in support and in opposition, and being fully advised, the court finds and rules as follows:

## I. FACTUAL BACKGROUND

Plaintiffs in this case challenge the constitutionality of RCW 29.79.490(2), which makes it illegal to pay gatherers of signatures on initiative and referendum petitions on a per signature basis.

Plaintiffs include LIMIT, a political action group originally formed to pass laws mandating term limits for state legislators which has continued to engage in other political activities, and Sherry Bockwinkel, president of LIMIT and owner of a business called "Camera Ready." Personally and through her business, she has overseen several petition drives, including one for the Citizens for Affordable Denture Care. Pursuant to her contract with that organization, she organized the collection of signatures for a 1994 initiative allowing the licensing of denturists. Bockwinkel paid at least some of the signature gatherers per signature rather than at a flat hourly rate.

■ Defendants are the prosecutors of various counties in the state of Washington and the chairperson of the Public Disclosure Commission, all sued in their official capacity.[1] The only remedy requested against them is injunctive relief as well as attorney fees and costs incurred in bringing this suit.[2]

Plaintiffs state three causes of action against defendants, namely that the statute (1) violates plaintiffs' First and Fourteenth

---

1. The court grants defendants' motion for summary judgment as to Irene Heninger, chair of the Public Disclosure Commission (PDC). Plaintiffs have failed to state a cause of action against her because neither she nor the PDC has any role in enforcing the challenged statute. However, defendant county prosecuting attorneys' argument that plaintiffs have failed to state a cause of action against them because plaintiffs have not yet been prosecuted under the challenged statute is without merit. Defendants do not dispute that they are officials responsible for enforcing the statute in question, and that they have not disavowed any intention of invoking the criminal penalty provision against plaintiffs. *Cf., Grant v. Meyer*, 828 F.2d 1446, 1449 (10th Cir. en banc 1987), *affirmed sub nom. Meyer v. Grant*, 486 U.S. 414, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988).

2. Defendants' contention that they are immune from any liability to plaintiff is equally without merit. Plaintiffs' limited request for injunctive relief does not impinge on the bounds of prosecutorial immunity outlined in *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

Amendment freedom of political speech contrary to 42 U.S.C. § 1983; (2) violates their First Amendment right to vote contrary to 42 U.S.C. § 1983; and (3) violates two provisions of the Washington State Constitution. The parties have filed cross-motions for summary judgment on all claims.

## II. LEGAL ANALYSIS

### 1. Freedom of Political Speech

■ As amended in 1993 by House Bill 1645, RCW 29.79.490 provides in relevant part as follows:

> Every person shall be guilty of a gross misdemeanor who:
>
> *   *   *   *   *   *
>
> (2) Provides or receives consideration for soliciting or procuring signatures on an initiative or referendum petition if any part of the consideration is based upon the number of signatures solicited or procured, or offers to provide or agrees to receive such consideration any of which is based on the number of signatures solicited or procured. . . .

Plaintiffs challenge the legality of this provision on the grounds that it unconstitutionally restricts the ways in which political speech in support of ballot measures can be funded. Plaintiffs insist that the provision violates their fundamental freedom of political speech protected by the First Amendment.

In support of their argument, plaintiffs cite Meyer v. Grant, 486 U.S. 414, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988), aff'g, 828 F.2d 1446 (10th Cir. en banc 1987). In Meyer, the Court considered the constitutionality of a Colorado criminal statute which prohibited any payment of initiative signature gatherers. Because the statute involved a direct limitation on political expression, which is at the heart of the types of speech protected by the First Amendment, the Court held that a strict scrutiny standard was applicable. In

fact, the Court noted that "[f]or that reason the burden that Colorado must overcome to justify this criminal law is well-nigh insurmountable." 486 U.S. at 425, 108 S.Ct. at 1893. The Meyer Court went on to conclude that the state had failed to show that the prohibition was justified and struck down the statute as unconstitutional.

Given the holding in Meyer, defendants in this case do not dispute that the circulation of initiative petitions is protected by the First Amendment and that those sponsoring an initiative may pay signature gatherers. But they contend that the challenged Washington statute survives constitutional scrutiny because, instead of totally banning payment of signature gatherers, it operates as a narrowly focused, content-neutral regulation intended to further the policy of protecting the integrity of the initiative process. Defendants argue that the prohibition on per signature payment serves to prevent fraud and to maintain citizen confidence in the initiative process.

■ Plaintiffs in turn agree that protecting the integrity of the initiative process is a legitimate objective which the legislature is entitled to promote through appropriately crafted legislation. But plaintiffs point out that defendants have shown no evidence of fraud linked to the payment per signature method of compensating signature gatherers.[3] Plaintiffs insist that, pursuant to Meyer, defendants must establish some evidence justifying the regulatory infringement on the exercise of First Amendment rights in order to meet their burden under the applicable strict scrutiny standard of review.

Defendants concede that they have no actual proof of fraud stemming specifically from the payment per signature method of collection. But they maintain that actual proof is not necessary because the issue is whether the state has voiced a legitimate

---

**3.** In support of their summary judgment motion, plaintiffs submit the affidavit of Donald F. Whiting, Assistant Secretary of State for the state of Washington. At plaintiffs' request, he listed the projected invalidity rates of signatures submitted for recent initiative petition drives as determined by random sampling. Plaintiffs then matched those rates to the signature collection method used in each of ten initiative campaigns dating back to 1990. This exercise revealed that there was no apparent consistent relationship between the collection method and the rate of invalidity. The highest rates of invalidity were found in drives using only volunteer signature collectors. See Second Affidavit of Sherry Bockwinkel.

concern and proposed a reasonable, narrowly focused way of addressing the concern. Defendants emphasize that the Washington legislature made a formal finding in § 1 of RCW 29.79 that paying workers on a per signature basis "encourages the introduction of fraud in the signature gathering process" by providing an incentive for encouraging unqualified people to sign a petition or encouraging qualified people to sign more than one petition for a single measure, and "threaten[s] the integrity of the initiative and referendum process by providing an incentive for misrepresenting the nature or effect of a ballot measure."

Based on the clear mandate from the United States Supreme Court in this area of First Amendment law, the court concludes that a formal legislative finding is not sufficient unless it is supported by some actual evidence. In *Meyer*, the Court recognized the state's interest in protecting the integrity of the initiative process, but held that "the state had failed to demonstrate that it is necessary to burden appellees' ability to communicate their message in order to meet its concerns." 486 U.S. at 426, 108 S.Ct. at 1894. The Court went on to say:

> The Attorney General has argued that the petition circulator has the duty to verify the authenticity of signatures on the petition and that compensation might provide the circulator with a temptation to disregard that duty. *No evidence has been offered to support that speculation, however, and we are not prepared to assume that a professional circulator*—whose qualifications for similar future assignments may well depend on a reputation for competence and integrity—*is any more likely to accept false signatures than a volunteer who is motivated entirely by an interest in having the proposition placed on the ballot.*

*Id.* (emphasis supplied).

■ This requirement of actual evidence in *Meyer* is entirely consistent with prior caselaw considering the constitutionality of legislation restricting expenditures in ballot referenda and initiative campaigns. Unless there is some proof of fraud or actual threat to citizens' confidence in government which would provide a compelling justification, the right of public discussion of issues may not be infringed by laws restricting expenditures on referenda and initiative campaigns. *See, e.g., Citizens Against Rent Control v. City of Berkeley*, 454 U.S. 290, 102 S.Ct. 434, 70 L.Ed.2d 492 (1981); (limitation on contributions to committees formed to support or oppose ballot measures held unconstitutional); *First National Bank v. Bellotti*, 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978) (statute prohibiting corporations from spending corporate funds to influence a vote on referendum proposals found unconstitutional).

Defendants cite a number of cases for the proposition that they do not need to show any actual evidence supporting the need for the legislation. All of those cases are distinguishable on their facts because they do not involve restrictions on expenditures to disseminate information on political issues.

For example, the constitutionality of laws governing the mechanics of the electoral process (*i.e.,* minimum requirements for candidates to appear on the ballot, campaigning in the vicinity of a polling place) is judged by a different, less stringent standard. *See, e.g., Burson v. Freeman*, — U.S. —, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992); *Burdick v. Takushi*, — U.S. —, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992); and *Munro v. Socialist Workers Party*, 479 U.S. 189, 107 S.Ct. 533, 93 L.Ed.2d 499 (1986).

Likewise, courts deciding the constitutionality of regulations pertaining to candidate contributions have shown more reluctance to "second-guess a legislative determination as to the need for prophylactic measures where corruption is the evil feared." *Federal Election Comm'n v. National Right to Work Comm.*, 459 U.S. 197, 210, 103 S.Ct. 552, 560, 74 L.Ed.2d 364 (1982). *See also, Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); *California Medical Ass'n v. Federal Election Comm'n*, 453 U.S. 182, 101 S.Ct. 2712, 69 L.Ed.2d 567 (1981); and *Austin v. Michigan Chamber of Commerce*, 494 U.S. 652, 110 S.Ct. 1391, 108 L.Ed.2d 652 (1990).

### 2. Right to Vote and State Constitutional Claims

Given the conclusion that RCW 29.79.490(2) is invalid because it unconstitutionally infringes on the freedom of political speech guaranteed by the First Amendment, the court need not reach plaintiffs' remaining arguments regarding violation of the First Amendment right to vote and the invalidity of the challenged statute under the Washington state constitution.

### III. CONCLUSION

Plaintiffs' motion for summary judgment as to the unconstitutionality of RCW 29.79.490(2) is GRANTED. Defendants' cross-motion for summary judgment is DENIED.