REQUESTED BY: Senator Annette Dubas
Nebraska Legislature
You have requested our opinion regarding the constitutionality of LB 39, as amended. Section 1 of the bill would amend Neb. Rev. Stat. §32-630 (2004), which establishes certain duties and prohibited acts in connection with the circulation of initiative and referendum petitions, to provide that "[n]o person shall . . . "[p]ay a circulator based on the number of signatures collected." Your question is whether imposing such a limitation on the payment of petition circulators is constitutional. The primary constitutional questions presented are whether the proposed restriction: (1) Violates the First andFourteenth
Amendments to the U.S. Constitution by infringing core political speech rights; or (2) Impermissibly burdens the initiative and referendum process in violation of the Nebraska Constitution.
I. First Amendment Free Speech Rights.
In Meyer v. Grant, 486 U.S. 414 (1988), the Supreme Court considered aFirst Amendment challenge to a Colorado statute prohibiting the payment of any compensation to initiative petition circulators. The Court recognized that "the circulation of a petition involves the type of interactive political communication concerning political change that is appropriately described as `core political speech'". Id. at 421-22. The Court found the ban on paying petition circulators restricted political expression in two respects:
 First, it limits the number of voices who will convey appellees' message and the hours they can speak and, therefore, limits the size of the audience they can reach. Second, it makes it less likely that appellees will garner the number of signatures necessary to place the matter on the ballot, thus limiting their ability to make the matter the focus of statewide discussion.
Id. at 422-23.
The Court rejected Colorado's claim that the absolute ban on payment of petition circulators was justified by the state's interest in protecting the integrity of the initiative process, stating:
 The State's interest in protecting the integrity of the initiative process does not justify the prohibition because the State has failed to demonstrate that it is necessary to burden appellees' ability to communicate their message in order to meet its concerns. The Attorney General has argued that the petition circulator has the duty to verify the authenticity of signatures on the petition and that compensation might provide the circulator with a temptation to disregard that duty. No evidence has been offered to support that speculation, however, and we are not prepared to assume that a professional circulator-whose qualifications for similar future assignments may well depend on a reputation for competence and integrity-is any more likely to accept false signatures than a volunteer who is motivated entirely by an interest in having the proposition placed on the ballot.
Id. at 426.
The Court further noted that "[o]ther provisions of the Colorado statute deal expressly with the potential danger that circulators might be tempted to pad their petitions with false signatures . . .", citing provisions making it a crime to forge petition signatures, to make false or misleading statements relating to a petition, or to pay someone to sign a petition. Id. at 426-27. Such provisions were deemed "adequate to the task of minimizing the risk of improper conduct in the circulation of a petition." Id. at 427. The Court thus held the statute violated theFirst and Fourteenth Amendments because its ban on "the payment of petition circulators impose[d] a burden on political expression that the State [ ] failed to justify." Id. at 428.
In the wake of Meyer's holding that an absolute ban on payment of petition circulators is unconstitutional, courts have reached varying results in deciding challenges to state laws which, while not prohibiting all payment of petition circulators, barred payment of circulators on the basis of the number of signatures collected. Three United States Court of Appeals decisions have upheld per-signature payment prohibitions challenged on First Amendment grounds. Initiative Referendum Inst. v. Jaeger, 241 F.3d 614 (8th Cir. 2001); Prete v. Bradbury, 438 F.3d 949 (9th Cir. 2006); Person v. New York State Bd. of Elections, 467 F.3d 141(2d Cir. 2006). Several federal district courts, however, have held that statutes prohibiting per-signature payment of circulators violated the First Amendment. Citizens for Tax Reform v. Deters, ___ F.Supp.2d ___ (2006 WL 3408224) (S.D. Ohio 2006); On Our Terms `97 PAC v. Secretary of State, 101 F.Supp.2d 19 (D. Maine 1999); Term Limits Leadership Council, Inc. v. Clark, 984 F.Supp. 470 (S.D. Miss. 1997); LIMIT v. Maleng, 874 F.Supp. 1138 (D. Wash. 1994); See also Idaho Coalition for Bears v. Cenarrusa, 234 F.Supp.2d 1159 (D. Idaho 2001) (Invalidating statute which criminalized selling petition signatures because it could be interpreted to bar per signature payment.).
In analyzing the question presented, the decision in Initiative and Referendum Inst. v. Jaeger is significant because Nebraska is in Eighth Circuit. Jaeger involved a First Amendment challenge to a North Dakota statute that prohibited the payment of petition circulators on a "per signature" or commission basis.[1] 241 F.3d at 615. The North Dakota statute, like LB 39, "prohibited payment "`on a basis related to the number of signatures obtained.'" Id. (quoting N.D. Cent. Code §16.1-01-12(11) (1997)). The court noted that, unlike Meyer, "[t]he statute . . . only regulate[d] the way in which circulators may be paid . . .", and did "not involve the complete prohibition of payment that the Supreme Court ruled unconstitutional." Id. at 617. As the state's evidence demonstrated the prohibition was necessary to prevent fraud and ensure the integrity of the petition process, and those challenging the ban failed to present evidence "showing that the ban on commissioned payments burden[ed] their ability to collect signatures . . .", the court concluded there was "sufficient evidence regarding signature fraud to justify the State's prohibition on commission payments." Id. at 618.
Initiative Referendum Inst. v. Jaeger indicates that a prohibition against payment of petition circulators based on the number of signatures collected does not, on its face, violate the First Amendment. Crucial to the court's finding that the ban did not contravene theFirst Amendment, however, was its determination that the state's evidence "justified the ban on commission payments as a necessary means to prevent fraud and abuse." Id. at 618. That evidence included legislative history discussing past irregularities in the signature gathering process linked to per-signature payments and evidence that per-signature payments were "an issue" in a 1994 incident in which approximately 17,000 petition signatures were invalidated. Id. In contrast, the court concluded those contesting the prohibition "produced no evidence that payment by the hour, rather than commission, would in any way burden their ability to collect signatures." Id. Thus, Jaeger is properly viewed as demonstrating that a ban on per-signature payment of circulators will survive a First Amendment challenge to its application where the contestant cannot demonstrate a significant burden on the ability to gather signatures, and the state can produce evidence justifying the prohibition as necessary to prevent fraud and abuse in the petition process.
This analysis is consistent with that employed in the other cases involving First Amendment challenges to the payment of petition circulators on a per-signature basis. In Prete v. Bradbury, the Ninth Circuit affirmed the district court's finding that Oregon's constitutional ban on the payment of petition circulators based on the number of signatures obtained "[did] not violate the First Amendment as applied . . ." because the "plaintiffs failed to prove the district court erred in determining [the ban did] not severely burden theirFirst Amendment rights in circulating initiative petitions, and [the state] ha[d] established that [the prohibition] serve[d] the important regulatory interest in preventing fraud and forgery in the initiative process." 483 F.3d at 971. The Ninth Circuit distinguished the district court decisions concluding such a ban violated the First Amendment "because in each case the state defending the prohibition on per-signature payment for petition circulators failed to present any evidence that per-payment signatures increased fraud . . . ." 483 F.3d at 970n.29 (citing Idaho Coalition for Bears v. Cenarrusa,234 F.Supp.2d 1159
(D. Idaho 2001); On Our Terms `97 PAC v. Secretary of State,101 F.Supp.2d 19 (D. Maine 1999); Term Limits Leadership Council, Inc. v. Clark, 984 F.Supp. 470 (S.D. Miss. 1997); LIMIT v. Maleng,874 F.Supp. 1138 (W.D. Wash. 1994)).
Based on the foregoing authority, we conclude that LB 39's proposed ban on the payment of petition circulators based on the number of signatures collected does not facially violate the First Amendment. Such a prohibition, however, could be subject to challenge on the ground that, as applied, it violates the First Amendment rights of petition supporters. Whether such a challenge would be successful would turn on an evaluation of the evidence presented by petition sponsors seeking to demonstrate the burden imposed by such a ban, and the State's evidence to justify the prohibition as a necessary means to prevent fraud and to preserve the integrity of the petition process. We cannot, however, conclude that LB 39 is clearly unconstitutional under the First andFourteenth Amendments.
II. Initiative and Referendum Rights under the Nebraska Constitution.
Article III, § 2, of the Nebraska Constitution, provides: "The first power reserved by the people is the initiative whereby laws may be enacted and constitutional amendments adopted by the people independently of the Legislature." Article III, § 3, provides: "The second power reserved is the referendum which may be invoked, by petition, against any act or part of an act of the Legislature, except those making appropriations for the expense of state government or a state institution existing at the time of the passage of such act." Article III, § 4, further provides: "The provisions with respect to the initiative and referendum shall be self-executing, but legislation may be enacted to facilitate their operation."
Legislative "facilitation" of the initiative process pursuant to art. III, § 4, means that the Legislature "may enact reasonable legislation to prevent fraud or to render intelligible the purpose of the proposed law or constitutional amendment." State ex rel. Stenberg v. Beermann,240 Neb. 754, 755-56, 485 N.W.2d 151, 152 (1992) (quoting State ex rel. Winter v. Swanson, 138 Neb. 597, 599, 294 N.W. 200, 201 (1940)). "Any legislative act which tends to insure a fair, intelligent and impartial result on the part of the electorate may be said to facilitate the exercise of the initiative power. Id. "Laws to facilitate the operation of [the initiative] must be reasonable, so as not to unnecessarily obstruct or impede the operation of the law." State ex rel. Ayres v. Amsberry, 104 Neb. 273, 277, 177 N.W. 179, 180 (1920), later vacated on procedural grounds. "Any legislation which would hamper or render ineffective the power reserved to the people would be unconstitutional." Id.
The proposed ban on payment of petition circulators based on the number of signatures collected is designed to prevent fraud in the petition gathering process. Prohibiting payment of circulators based on the number of signatures gathered arguably preserves the integrity of the process by eliminating the incentive for circulators to forge signatures or engage in other fraudulent activity in collecting petition signatures. As is the case regarding the First Amendment analysis, however, determining whether the prohibition proposed in LB 39 is a reasonable regulation to prevent fraud which facilitates the initiative process, as opposed to an impermissible obstruction or impediment, would no doubt hinge on an evaluation of evidence relating to the burden imposed on petition sponsors by such a restriction, as well as evidence as to the State's justification of the prohibition as a means to prevent fraud. Thus, while the prohibition against payment of petition circulators based on the number of signatures collected in LB 39 does not facially violate art. III, § 4, its application could be challenged based on facts demonstrating it does not reasonably serve to facilitate the petition process.
Sincerely yours,
JON BRUNING
Attorney General
L. Jay Bartel
Assistant Attorney General
Approved:
[1] A statute requiring that petition circulators be North Dakota residents was also challenged in Jaeger. The Circuit Court upheld the residency requirement, finding that the state had a "compelling interest in preventing fraud" and that the requirement did "not unduly restrict speech. . . ." 241 F.3d at 616.