ANDREW M. MORRISSEY, APPELLANT, V. ADDISON WAIT, SECRETARY OF STATE, APPELLEE.

FILED NOVEMBER 1, 1912.    No. 17,839.

1. **Elections: NEW PARTIES: FORMATION.** Under the provisions of section 45, ch. 52, laws 1907, providing for the formation of new political parties, it is not essential that the 500 electors who must be present at a mass state convention to form a new party shall be the identical 500 electors who are required to sign an agreement to form such new party and support its nominees at the next election.

2. ———: **NOMINATIONS: NEW PARTIES.** Sections 39, 40, ch. 52, laws 1907, providing for the nomination of candidates by a convention or committee of a political party, apply to nominations by new parties for general elections, as well as to nominations made by previously organized parties to be filled at special elections, and for offices excepted from the provisions of the act.

3. ———: ———: ———: **FILING CERTIFICATE.** Where a new party is formed after the time fixed by the statutes for the holding of the regular primary elections, nominations for candidates of such party may be made by mass convention held under the provisions of section 45, ch. 52, laws 1907, and certificates of nomination of such candidates may be filed with the proper officer at the time specified in section 40 of the same act.

4. ———: ———: **STATUTES: CONSTRUCTION.** In construing statutes relating to the exercise of the elective franchise and to the nom-

ination of candidates by political parties, either at primaries or by conventions or committees, the court should construe doubtful or ambiguous statutes in the light of the constitutional provision that "all elections shall be free; and there shall be no hindrance or impediment to the right of the qualified voter to exercise the elective franchise." Const., art. I, sec. 22.

APPEAL from the district court for Lancaster county: P. JAMES COSGRAVE, JUDGE. *Affirmed.*

*Andrew M. Morrissey* and *Morning & Ledwith,* for appellant.

*Grant G. Martin, Attorney General, Jesse L. Root* and *C. C. Flansburg, contra.*

LETTON, J.

This is an appeal from a judgment of the district court for Lancaster county sustaining the right of the candidates of the Progressive party to have their names printed on the official ballots for the general election in 1912. The facts seem to be as follows: A mass convention to form a new party was held in Lincoln on September 3, 1912. On the afternoon of that day the meeting was adjourned until evening, at which time Governor Johnson of California was advertised to speak. A large number of people gathered and were present at the evening meeting. The chairman of the meeting read the proposed Progressive party platform, which was adopted by a *viva voce* vote. After the address of Governor Johnson had been delivered and a number of persons had left the hall, the persons whose rights are in dispute in this case were nominated as candidates of the Progressive party. On September 13, 1912, there were filed in the office of the secretary of state five separate documents, each bearing the following heading: "We, the undersigned qualified electors of the state of Nebraska, in mass convention assembled, do hereby associate ourselves together, and agree to form a new political party, to be designated the 'Progressive' party, and we do

hereby agree to affiliate with said party, and to support its nominees at the next general election." These papers were bound together and filed with the secretary of state as one document. The total number of signatures thereon exceed 500 in number. There was also attached an affidavit by one Van Meter in substance stating that he is a qualified elector; that at the mass convention, at which the Progressive party was organized as a new party, he had charge of and witnessed the signatures, and saw the electors sign the same and agree to support its nominees at the next general election, and that he verily believes them all to be qualified electors of the state. On the same day a certificate of nomination and oath in proper form were filed in the office of the secretary of state, signed by Arthur G. Wray, as chairman, and John C. Sprecher, as secretary of the convention. Within three days after the filing of this certificate of nomination, the plaintiff, who is a candidate for the office of attorney general on the ticket of the Democratic party, filed written objections challenging the legality of the formation of the new party and the validity of the certificate of nomination. The secretary of state fixed a time and place for a hearing, and notified the several candidates. At the hearing evidence was taken, and the objections were overruled. A bill of exceptions was prepared and an appeal taken to the district court for Lancaster county, which affirmed and sustained the action of the secretary of state.

At the hearing before the secretary of state, it was contended that the Progressive party was not legally organized, because the 500 persons who signed the agreement to form a new party were not identified as being members of the mass convention, but this contention was virtually waived at the argument before this court. There is no definite proof that 500 electors were not present at the convention. The evidence is conflicting on this point, but seems to preponderate in favor of the decision of the secretary of state. Furthermore, there is no requirement

in the statute that the 500 electors who sign the agreement must be the identical persons who were present at the convention. Appellant concedes that the primary law of 1907 is in force, except as modified by chapter 46, laws 1911, but argues that the Progressive party is not entitled to a place upon the ballot at the 1912 election, for the reason that section 45, ch. 52, laws 1907, provides: "Such new party shall be entitled to have a separate party ballot at the next primary election held thereafter." He says in this connection that "the legislature did not intend that such new party shall be entitled to a party ticket at the next *general* election," but that it would be entitled to a party ticket *"at the first primary held thereafter,"* and that, if the party was not organized in time to get its ticket in the field by means of a primary election before the general election, it must wait until the next primary, so that it may get its ticket in the field through the regular channel. This view would bar these candidates from the 1912 election.

The provision for the organization of new parties is contained in section 45, ch. 52, laws 1907 (Ann. St. 1911, sec. 5905, Comp. St. 1911, ch. 26, sec. 118$s$), which is a part of the law relating to primary elections. The section is lengthy and will not be copied here in full. It contains the requirements hereinbefore referred to that there shall be 500 electors present at a mass state convention, and the same number of signers to an agreement to form a new party. It also contains the foregoing quotation that "such new party shall be entitled to have a separate party ballot at the next primary," etc. This section, when considered with the requirement of the statute that all nominations be made by primary elections, might justify the thought that mass conventions can only form a new political organization, and that its candidates must be named at the next primary; but a view of other sections of the statute leads to a different conclusion. Section 39 of the same act provides: "All nominations for candidates of any political party for office to be filled at

a special election or any other office to be filled by the electors, excepted from the provisions of this act, shall be nominated by a convention or committee of their political party," etc.; and provides, further: "It is the intention that the manner provided in this section for the nomination of officers named herein, by a convention or committee, shall apply only where such officers are to be chosen at a special election," etc. Section 40, in substance, provides that, when nominations are made by a convention or committee as provided for in section 39, the certificates of nomination to be filed with the secretary of state shall be filed not less than 25 days before the election; but it provides, further: *"Certificates of nomination for a new party* may be filed with the secretary of state or the county or municipal clerk twenty-five or twenty or fifteen days before the election, as the case may require."

Construing the several sections of the statute together, it seems clear that the "certificate of nomination for a new party" mentioned in section 40 applies to the necessary certificate when a nomination is made by convention, and cannot possibly apply to a nomination made by a primary election, as shown by the returns thereof, in which latter case no nominating certificate is required. The limit within which such nominating certificate may be filed with the secretary of state is much later in point of time than that fixed for canvassing the returns and for the certification to the secretary of state of the results of a primary election. It seems clear, therefore, that a new party may be formed after the time when it is possible for it to participate in the regular primary election It is proper to say that it is the duty of the courts, in construing statutes providing for printing the names of candidates of both old and new political organizations upon the ballot, to do so in the light of the constitutional requirement that "all elections shall be free; and there shall be no hindrance or impediment to the right of the qualified voter to exercise the elective franchise." Const.,

art. I, sec. 22. The legislature may regulate the manner of nomination of candidates whose names shall be printed at public expense upon the official ballot. It may, and patently does, recognize the existence of political parties, and the formation of new parties in this connection. Its regulations in this respect are within its powers, provided that they are reasonable and do not unnecessarily hamper or impede the right of a voter to vote for whomsoever he pleases at the general election.

We are of opinion that, under the plain provisions of the sections of the statute referred to, the candidates of the Progressive party are entitled to a place upon the official ballot. The opinion of the secretary of state and the judgment of the district court are

AFFIRMED.

HAMER, J., concurring.

On the 28th day of September, 1912, the appellant, Andrew M. Morrissey, filed his petition in the district court for Lancaster county alleging that he was a qualified elector of Nebraska, eligible to the office of attorney general, and nominated at the primary election, April 19, 1912, as the democratic candidate for said office, and that he received his certificate of nomination and is entitled to have his name printed on the official ballot; that the defendant, Addison Wait, is the secretary of state, and that it is his duty as secretary to certify to the several county clerks the nominations of all candidates named by the political parties, in order that the names may be printed on the official ballot to be used at the November election; that at the time he was nominated there was no political party in Nebraska known as the Progressive party; that on September 13, 1912, there were filed in the office of the secretary of state certain documents, reading: "Agreement to Form New Party. We, the undersigned qualified electors of the state of Nebraska, in mass convention assembled, do hereby associate ourselves together, and agree to form a new political party, to be

designated the 'Progressive' party, and we do hereby agree
to affiliate with said party, and to support its nominees at
the next general election;" that there was appended to
the said documents the affidavit of G. O. Van Meter, set-
ting forth "that he is a qualified elector of this state, and
that at the mass convention held in the city of Lincoln
on September 3, 1912, at which the Progressive party was
formed and organized as a new party, he had charge of
and witnessed the signatures, and saw the electors preced-
ing sign the agreement to form said new party and to
support its nominees at the next general election, and
that he verily believes them all to be qualified electors in
the state;" that on said 13th day of September, at the time
of filing the said alleged agreements, there was also
filed in the office of the secretary of state a document pur-
porting to be a certificate of nomination for the several
state offices involved and for presidential electors and
for United States senator, and designating said several
candidates. The certificate of nomination certifies that at
a mass convention held in the city of Lincoln, September
3, 1912, a new party was then and there organized under
the name of the "Progressive Party," and that not less
than 500 electors participated in the convention. It was
further alleged that there was a less number than 500,
and that they were composed of persons of both sexes.

It is objected by Mr. Morrissey that there is no legal
authority to hold political conventions to nominate can-
didates for any of said offices, and that the laws of the
state prohibit the making of nominations for said offices
by political conventions; that said pretended convention
did not represent a political party casting 1 per cent. of
the votes at the last general election; that the purpose
of holding said convention was to disorganize existing
political parties, and to impair the value of the several
nominations given to candidates for said several offices.
It was further objected that the names of said candidates
so claimed to be nominated should not be certified to the
county clerks of the several counties as candidates of said

Progressive party, and he objected to any certificate being made by the secretary of state; that, upon the filing of said objections, the secretary of state fixed a time for the hearing at 2 o'clock in the afternoon of September 18, 1912, and at said time and place the objector appeared in person and by attorneys, and said candidates also appered by attorneys, and evidence was introduced, and the matter was argued to the secretary of state, who thereupon entered an order overruling said objections, and filed a written opinion assigning his reasons therefor; that on the 2d day of October said cause was presented for review before the Honorable P. James Cosgrave, one of the judges of the district court for Lancaster county, who, after argument, entered an order sustaining the action of the secretary of state and denying the relief prayed for in the petition; that it was found upon the stipulation and agreement between the parties that the Progressive party was duly organized and its nominees duly nominated and legally certified to the secretary of state, and that they are entitled to a place on the official ballot as the candidates of the Progressive party. It was therefore ordered, considered and adjudged that the said order of the secretary of state be in all things confirmed and approved, and that the proceedings of the said objector, Andrew M. Morrissey, be dismissed.

The case comes to this court to review the judgment rendered in the district court. It is contended that the judgment of the district court should have been in favor of said Morrissey and against the defendant, Wait, and that an order should have been entered enjoining the secretary of state from certifying the names of said candidates to the several county clerks to be placed upon the official ballot.

It appears from an examination of the record that there was a mass convention held in Lincoln at the city Auditorium, September 3, 1912, and that more than 500 electors were in attendance and participating. It is contended that in the afternoon there were less than 250

voters present in the auditorium, but it further appears that later in the evening there was an immense audience. It is alleged that the electors came for the purpose of hearing Governor Johnson of California deliver a speech. It must be admitted that, if a large number of electors were there, they may have been there for the purpose of participating in the convention, as also for the purpose of hearing the speech. It being admitted that a large audience had assembled, it is impossible to say for what particular purpose they were there. It is contended that the papers signed were in five separate parts, although they all read, in substance, the same way. It would not be expected that 578 names would all be placed on one long paper, when it would be much more convenient to put them on five papers. This objection is purely technical and without merit.

A consideration of the statute would seem to dispose of the questions presented. Section 118s, ch. 26, Comp. St. 1911, would seem to furnish statutory authority for organizing a new party in the state. It provides: "Electors may form a new party. * * * In order to form a new party there shall be present at a mass convention electors to the number of at least five hundred (500) in a state convention." Section 117f, ch. 26, Comp St. 1911, provides: "The name of no candidate shall be printed upon an official primary ballot unless at least thirty (30) days prior to such primary" nomination papers be filed. It is provided by section 118n, ch. 26, Comp. St. 1911: "Certificates of nomination for a new party may be filed with the secretary of state or the county or municipal clerk twenty-five or twenty or fifteen days before the election, as the case may require." The foregoing section provides that this may be done in nominations that are made by convention or committee. The foregoing sections seem to dispose of the matter. It would seem not to be the intention of the primary act to abrogate the right of electors to form a new party; but apparently the thing contemplated is to perpetuate the right to form

new parties. Whether it is essential that the particular 500 electors who must be present at a mass state convention to form a new party shall be the identical electors who are contemplated by the act as necessary to sign an agreement to form such new party may be debatable. Section 45, ch. 52, laws 1907, provides, among other things, that "in order to form a new party there shall be present at a mass convention electors to the number of at least five hundred (500) in a state convention," and electors to "at least the number specified shall sign an agreement to form such new party and support its nominees at the next election;" but the act does not say the same 500 at the convention shall sign the agreement. It would be a harsh construction of the act to say that the same 500 who attend the convention shall also sign the agreement.

There is a contention made that the purpose of forming the new party is not to bear immediate fruit, and that the new party is not to have recognition until after it has voted at a primary. This is not according to the American idea, and it would be eminently unjust. It would be directly in conflict with section 22 of the Nebraska bill of rights, which provides: "All elections shall be free; and there shall be no hindrance or impediment to the right of a qualified voter to exercise the elective franchise."

Secretary of State Wait acted upon the evidence brought before him. His conclusion seems to have been a proper one. It was sustained by the district court for Lancaster county. It would be unfair to many thousand electors of the state of Nebraska to prevent them from voting for the candidates of their choice.