STATE OF NEBRASKA EX REL. DON STENBERG,
ATTORNEY GENERAL OF THE STATE OF NEBRASKA, APPELLANT,
V. SCOTT MOORE, SECRETARY OF STATE OF THE
STATE OF NEBRASKA, APPELLEE.

558 N.W.2d 794

Filed January 24, 1997.    No. S-96-697.

Don Stenberg, Attorney General, and L. Steven Grasz for appellant.

Michael F. Coyle, Special Assistant Attorney General, and Mary Kay Frank, of Fraser, Stryker, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, WRIGHT, CONNOLLY, and GERRARD, JJ.

WRIGHT, J.

The relator, the Attorney General of the State of Nebraska, appeals from a district court order denying his request for declaratory relief.

## SCOPE OF REVIEW

Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court has an obligation to reach a conclusion independent of that of the inferior court. *State v. Bundy,* 250 Neb. 213, 549 N.W.2d 122 (1996); *Bristol v. Rasmussen,* 249 Neb. 854, 547 N.W.2d 120 (1996).

## FACTS

On March 25, 1988, the Legislature approved Legislative Resolution 248CA (hereinafter Amendment 3A), which provided in part as follows:

Sec. 2. The proposed amendments shall be submitted to the electors in the manner prescribed by Article XVI, section 1, of the Constitution of Nebraska. The proposition for the submission of the proposed amendments shall be placed upon the ballot in the following forms:

"A constitutional amendment to provide that only registered voters, instead of electors, may sign petitions for initiatives or referendums.

For

Against".

The apparent purpose of Amendment 3A was to change the terminology in article III, § 2, of the Nebraska Constitution from "electors" to "registered voters" when referring to those people who are eligible to sign an initiative or referendum petition. The Executive Board of the Legislative Council submitted an explanatory statement for Amendment 3A which stated as follows: "*A vote FOR this proposal would change from 'electors' to 'registered voters' those people who are eligible to sign an initiative or referendum petition. A vote AGAINST this proposal would retain the current requirement that one must be an elector to sign an initiative or referendum petition.*"

The Secretary of State prepared the proposed ballot initiative, and it was included on the November 8, 1988, ballot. Amendment 3A was subsequently approved by a majority of the voters. Thereafter, in *Duggan v. Beermann*, 245 Neb. 907, 515 N.W.2d 788 (1994), this court considered the effect of Amendment 3A on the number of petition signatures required in order to place an initiative on an upcoming ballot.

Prior to the passage of Amendment 3A, article III, § 2, of the Nebraska Constitution, read in conjunction with article III, § 4, provided that the number of signatures required for an initiative to be placed on the ballot was the number of "electors" equal to at least 10 percent of the number of votes cast in the preceding gubernatorial election if the initiative petition was for a constitutional amendment. Amendment 3A changed the signature requirement to 10 percent of the registered voters. Article III, § 4, which was not the subject of Amendment 3A, provided that the number of signatures would be based on the number of votes cast in the last gubernatorial election.

In *Duggan*, Nebraskans for Term Limits had filed with the Secretary of State a proposed initiative petition to amend the Nebraska Constitution to limit various state officials to a maximum number of consecutive terms in their respective offices. The proposed amendment also sought to amend the Nebraska Constitution to limit the number of consecutive elections in which certain candidates for the House of Representatives and the U.S. Senate would be eligible to file for election or have their names placed on an official Nebraska ballot. The Secretary of State certified the petition and ordered that the initiative question be placed on the ballot in the November 1992 general election. Timothy Duggan, a citizen and registered voter in the State of Nebraska, challenged the initiative petition and the number of signatures, claiming the number of signatures submitted by Nebraskans for Term Limits did not meet the requirements of the Nebraska Constitution for placing an initiative on the ballot. Duggan claimed that the Secretary of State could not compute the number of signatures required based upon the number of those who voted in the last gubernatorial election, but, rather, had to calculate the number of signatures required based upon the number of registered voters on the date upon which the signatures were due.

We noted that the plain language of article III, § 2, as amended by the voters in November 1988, required that a petition for the amendment of the Nebraska Constitution be signed by 10 percent of the registered voters. Thus, we concluded that article III, § 4, was repealed by implication in 1988, when article III, § 2, was amended. As a result, the number of signatures required to place an initiative on the ballot would no longer be calculated based upon the number of votes cast in the previous gubernatorial election. Instead, we held that because Amendment 3A repealed the relevant provisions of article III, § 4, the number of signatures required to place an initiative on the ballot would be calculated based on the number of registered voters at the time the initiative petition is submitted. Accordingly, we concluded in *Duggan* that the petition for term limits lacked the required number of signatures for placement of the measure on the ballot. Therefore, the amendments contained in the measure were not properly placed on the ballot,

and we declared the amendments void despite their approval by the voters in the November 1992 general election.

In the present case, the Attorney General filed a petition for declaratory judgment in Lancaster County District Court, alleging that Amendment 3A was not accompanied on the ballot by an explanatory statement advising voters of the effect its passage would have on their constitutional rights, as the Attorney General argues is required by Neb. Rev. Stat. § 32-707.01 (Reissue 1993). The Attorney General alleged that the explanatory statement did not describe the effect Amendment 3A would have upon article III, § 4, and the resulting increase in the number of signatures required for initiative or referendum petitions.

The Attorney General's petition claimed that the explanatory statement and ballot title accompanying Amendment 3A violated Neb. Const. art. I, § 22, by denying Nebraska electors their right to vote on a proposed constitutional amendment on a ballot free of misleading content or omission. The Attorney General also alleged that the explanatory statement and ballot title accompanying Amendment 3A violated Neb. Const. art. XVI, § 1, by failing to submit a proposed constitutional amendment to the electors for approval or rejection in a manner showing the true character and purpose of the amendment. Thus, the Attorney General requested a declaratory judgment finding that Amendment 3A was void and of no effect and determining that Neb. Const. art. III, §§ 2, 3, and 4, remain valid constitutional provisions as they existed prior to Amendment 3A, subject only to Amendment 3B as adopted on November 8, 1988.

On June 10, 1996, the district court dismissed the Attorney General's petition for declaratory judgment.

## ASSIGNMENTS OF ERROR

The Attorney General assigns two errors to the district court: (1) The district court erred in not ordering relief consistent with its findings of fact, as required by applicable law, and (2) the district court erred in failing to follow controlling Supreme Court precedent regarding the adjudication of constitutional issues after an election has occurred.

## ANALYSIS

The issue as framed by the Attorney General is whether Amendment 3A was properly submitted and adopted by the vote of the people of the State of Nebraska in the 1988 general election. The question presented is whether Amendment 3A was accompanied on the ballot by an explanatory statement that properly advised the voters in clear, concise language of the effect of a vote for or a vote against Amendment 3A, as required by § 32-707.01.

The Attorney General's concern regarding Amendment 3A is that the explanatory language that accompanied the corresponding ballot item did not clearly articulate the fact that the passage of the ballot item would result in increasing the number of signatures required to place an initiative or referendum measure on the ballot. The Attorney General argues that the explanatory language did not sufficiently warn the voters of this effect and that, as a result, the voters may have supported Amendment 3A without having any desire to increase the number of signatures required to place an initiative or referendum measure on the ballot.

The Attorney General's position that the voters did not want to increase the number of signatures required for initiative or referendum petitions is clearly undermined by the result of the November 5, 1996, election, of which we take judicial notice. Courts may take judicial notice of an election and the result of the election when the declaration is made as provided by law. See *State ex rel. Caldwell v. Peterson*, 153 Neb. 402, 45 N.W.2d 122 (1950). Courts will take judicial notice of an authorized election and its results, and of the number of votes cast thereat. *Kokes v. State*, 55 Neb. 691, 76 N.W. 467 (1898).

Initiative measure No. 410 (Initiative 410) was placed on the ballot for the November 5, 1996, election. The text of Initiative 410 is set forth as follows:

> III-2 "The first power reserved by the people is the initiative by which laws may be enacted and constitutional amendments adopted by the people independently of the Legislature. To initiate the enactment of a law or the adoption of a constitutional amendment, a petition shall be circulated which contains the entire proposed law or

constitutional amendment. The petition shall be filed with the Secretary of State. If the petition is signed by the required number of registered voters appropriately distributed, the Secretary of State shall submit the proposed law or constitutional amendment to the electors of the state at the first general election held not less than four months after the petition is filed. The required number of signatures for a law is seven percent of the votes which were cast for Governor at the general election next preceding the filing of the petition. The required number of signatures for a constitutional amendment is ten percent of the votes which were cast for Governor at the general election next preceding the filing of the petition. The distribution of the registered voters signing a petition for a law or a constitutional amendment shall include signatures equal in number to five percent of the votes cast for Governor at the general election next preceding the filing of the petition from each of two-fifths of the counties in the state. The same measure, either in form or in essential substance, shall not be submitted to the people by initiative petition, either affirmatively or negatively, more often than once in three years. If conflicting measures submitted to the people at the same election are approved, the one receiving the highest number of affirmative votes shall become law as to all conflicting provisions. The constitutional limitations as to the scope and subject matter of statutes enacted by the Legislature shall apply to those enacted by the initiative."

III-3 "The second power reserved is the referendum which may be invoked against any act or part of an act of the Legislature, except those making appropriations for the expense of the state government or a state institution existing at the time of the passage of such act. To refer an act or part of an act of the Legislature, a petition shall be circulated which sets out the title of the act against which the referendum is invoked and, if only a portion of the act is sought to be referred, the number of the e [sic] section or sections or portion of sections of the act designating such portion. The petition shall be filed with the Secretary

of State within ninety days after the Legislature at which the act sought to be referred was passed has adjourned sine die or for more than ninety days. If the petition is signed by the required number of registered voters appropriately distributed, the Secretary of State shall refer the act or the part of the act to the electors for approval or rejection at the first general election to be held not less than thirty days after the filing of the petition. The required number of signatures is five percent of the votes which were cast for Governor at the general election next preceding the filing of the petition. The distribution of the registered voters signing a referendum petition shall include signatures equal in number to five percent of the votes cast for Governor at the general election next preceding the filing of the petition from each of two-fifths of the counties in the state.

When the referendum is invoked as to any act or part of act, other than emergency acts or those for the immediate preservation of the public peace, health, or safety, by petition signed by registered voters equal in number to ten percent of the number of votes which were cast for Governor at the general election next preceding the filing of the petition distributed so as to include signatures equal in number to five percent of the votes cast for Governor at the general election next preceding the filing of the petition from each of two-fifths of the counties in the state, it shall suspend the taking effect of such act or part of act until the same has been approved by the electors of the state."

The ballot language for Initiative 410 is set forth as follows:

*A vote "FOR" will amend the Constitution of Nebraska to return the number of signatures required on initiative and referendum petitions to ten percent of the votes cast for Governor at the most recent preceding general election if for a proposed Constitutional amendment; seven percent of such votes cast if for enactment of a law; ten percent of such votes cast if seeking to suspend the effect of an act of the Legislature pending a vote of the people;*

*and five percent of such votes cast if for a referendum on an act of the Legislature.*

*A vote "AGAINST" will not cause the Constitution of Nebraska to be amended in such a manner and the number of signatures required will be based on percentages of the total number of registered voters.*

The ballot language that accompanied Initiative 410 articulated that the sole purpose of Initiative 410 was to return the number of signatures required on initiative and referendum petitions to the number required prior to the adoption of Amendment 3A. The ballot language stated that a vote against Initiative 410 would not amend the Nebraska Constitution in this fashion, and the number of signatures required will be based on percentages of the total number of registered voters.

Thus, Initiative 410 gave the voters in the November 5, 1996, election a clear opportunity to verify the Attorney General's concern that the passage of Amendment 3A was the result of a misinformed voting public. The passage of Initiative 410 would have established, in fact, that the voters preferred the lower signature requirement that prevailed prior to Amendment 3A and our decision in *Duggan v. Beermann*, 245 Neb. 907, 515 N.W.2d 788 (1994). However, the voters clearly rejected the proposed return to the lower signature requirement. As of December 11, 1996, the abstract of the number of votes stated that 242,537 votes were cast for and 329,946 votes were cast against Initiative 410.

The Attorney General claims to have initiated this petition for declaratory judgment in order to protect the constitutional right of Nebraska citizens "to vote on the proposed constitutional amendment on a ballot free of misleading content or omission . . . ." Brief for appellant at 2. If we were to now determine that Amendment 3A was void and of no effect, we would be required to ignore the vote of the people of Nebraska that most recently decided this issue. We decline to do this. There can be no doubt that the people clearly understood which rights were involved in Initiative 410.

*A vote "FOR" will amend the Constitution of Nebraska to return the number of signatures required on initiative*

*and referendum petitions to ten percent of the votes cast for Governor at the most recent preceding general election . . . .*

*A vote "AGAINST" will not cause the Constitution of Nebraska to be amended in such a manner and the number of signatures required will be based on percentages of the total number of registered voters.*

We have long recognized that a proposed amendment to the Nebraska Constitution could be submitted to the electorate, see, *Omaha Nat. Bank v. Spire,* 223 Neb. 209, 389 N.W.2d 269 (1986); *In re Senate File 31,* 25 Neb. 864, 41 N.W. 981 (1889), and that the people of Nebraska may amend their Constitution in any way they see fit, provided the amendments do not violate the federal Constitution or conflict with federal statutes or treaties, see *Omaha Nat. Bank v. Spire, supra.* The people may also choose not to amend their Constitution. In matters involving the people's amendment of their Constitution, we do not attempt to judge the wisdom or desirability of such amendments.

The initiative petition for Initiative 410 set forth what measure the signers of the petition desired to have submitted to the voters. To now ignore the results of the vote on Initiative 410 would be to deny such voters the same rights that the Attorney General seeks to protect.

In *Omaha Nat. Bank,* we considered how the court should approach the issue of determining the intent of the voters regarding the adoption of an initiative enactment. We concluded that with regard to an initiative enactment, there was no meaningful way to determine the intent which motivated voters to adopt the enactment. We held that the intent of the voters adopting an initiative enactment to the Nebraska Constitution must be determined from the words of the initiative amendment itself.

In the present case, we do not need to determine the intent of the voters as to Amendment 3A. Instead, the pronouncement of the voters in the November 5, 1996, election guides our decision in this case. The language of Initiative 410 is clear and unambiguous, and the intent of the people is determined by simply counting the votes.

Since this case involves a question of law, we have an obligation to reach a conclusion independent of that of the inferior court. See, *State v. Bundy,* 250 Neb. 213, 549 N.W.2d 122 (1996); *Bristol v. Rasmussen,* 249 Neb. 854, 547 N.W.2d 120 (1996). Therefore, for the reasons set forth in this opinion, we affirm the judgment of the district court which dismissed the Attorney General's petition for declaratory judgment.

AFFIRMED.

LANPHIER, J., not participating.

FAHRNBRUCH, J., concurs in the result.