PONY LAKE SCHOOL DISTRICT 30, ROCK COUNTY, BASSETT, NEBRASKA, ET AL., APPELLEES AND CROSS-APPELLANTS, v. STATE COMMITTEE FOR THE REORGANIZATION OF SCHOOL DISTRICTS ET AL., APPELLANTS AND CROSS-APPELLEES.

710 N.W.2d 609

Filed March 3, 2006. No. S-05-1438.

Jon Bruning, Attorney General, Dale A. Comer, Lynn A. Melson, and Leslie S. Donley for appellants.

Donald B. Stenberg, of Erickson & Sederstrom, P.C., and John F. Recknor, of Recknor, Williams & Wertz, for appellees.

Mark D. McGuire, of McGuire & Norby, for amicus curiae Nebraska State Education Association.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ., and HANNON, Judge, Retired.

HENDRY, C.J.

## I. NATURE OF CASE

This is an appeal from an order of the district court for Lancaster County permanently enjoining the State Committee for the Reorganization of School Districts (the State Committee) from "issuing, enforcing or implementing any orders to dissolve and/or attach the territories of the Class I school districts in the State of Nebraska pursuant to LB 126" until after the results of a referendum election regarding 2005 Neb. Laws, L.B. 126, are certified from the next general election to be held on November 7, 2006.

The district court's judgment was based on its determination that the June 15, 2006, effective date of the State Committee's dissolution and attachment orders impermissibly impedes the

ability of the people of Nebraska to exercise their referendum rights in a meaningful way. Implicit in this ruling is the district court's determination that the effective date of L.B. 126 is unconstitutional under the referendum provisions of the Nebraska Constitution. Both parties agree that this was the basis of the court's permanent injunction order.

## II. BACKGROUND

L.B. 126 was passed—over the Governor's veto on June 3, 2005. The act requires the reorganization of school districts so that all Nebraska school districts offer education in grades kindergarten through 12. See Neb. Rev. Stat. § 79-401(1) (Supp. 2005). Specifically, the act required the State Committee to dissolve Class I school districts and to attach their territory to one or more Class II, III, IV, and VI school districts with which the Class I district was previously associated with or a part of by December 1, 2005. Neb. Rev. Stat. §§ 79-4,113(1) and 79-4,114(1) (Supp. 2005). These orders are not effective until June 15, 2006. See §§ 79-4,113(4) and 79-4,114(7).

In response to the passage of L.B. 126, a group of Nebraska citizens identified as the "Nebraskans for Local Schools Committee" sponsored a referendum petition to refer L.B. 126 to the voters for their approval or rejection. See Neb. Const. art. III, § 3. On September 1, 2005, the sponsors timely filed their petition with the Secretary of State. On October 24, the Secretary of State found that of the 1,128,694 registered voters in Nebraska on September 1, the sponsors had collected 87,006 valid signatures statewide (a little more than 7.7 percent), and the valid signatures of 5 percent of registered voters in 67 out of 93 counties. These signatures constituted an amount and distribution sufficient to satisfy the constitutional requirements for placing the referendum measure on the ballot at the next general election to be held in November 2006. The Secretary of State also found, however, that the sponsors fell short of satisfying the requirement of obtaining the signatures of 10 percent of registered voters in order to suspend the act's operation. See Neb. Const. art. III, § 3. None of the parties contest the number of valid signatures.

On October 25, 2005, several Class I school districts, three individuals who were registered voters and patrons of the Class I

school districts, and a Class III school district (collectively plaintiffs) filed a class action suit against the State Committee and its members, seeking a preliminary and permanent injunction. Plaintiffs alleged four "causes of action."

First, plaintiffs alleged that by dissolving Class I school districts with an effective date of June 15, 2006, prior to the referendum election to be held in November 2006, the Legislature has "improperly and unconstitutionally stripped Nebraska voters of the right to vote on this question guaranteed to the voters by Article III, Sections 1, 3 and 4 of the Nebraska Constitution because the repeal of LB 126 . . . would not restore Class I school districts." Second, plaintiffs alleged that the June 15, 2006, effective date of the dissolutions violated their "fundamental right to vote" on "the question of the forced consolidation of Class I school districts" as "guaranteed by the First Amendment of the Constitution of the United States and by Article I, Section 22 of the Nebraska Constitution." Third, plaintiffs alleged L.B. 126 would render a successful repeal of the act an unauthorized advisory vote because the act's repeal would not reinstate Class I schools. Finally, plaintiffs alleged that the number of signatures they submitted was "more than ten percent of the number of votes cast for Governor at the general election in 2002" and that "therefore[,] the taking effect of LB 126 has been suspended pursuant to Article III, Section 3 of the Nebraska Constitution."

On October 27, 2005, plaintiffs filed an amended complaint, additionally requesting the court to declare unconstitutional all provisions of L.B. 126 that required the dissolution and attachment of Class I school districts before the referendum election to be held on November 7, 2006.

In a written order entered on November 14, 2005, granting plaintiffs' request for a temporary injunction, the district court recognized that the First Amendment prohibits states from impermissibly burdening the right to petition the government by initiative or referendum when the citizens of a state have reserved that right to themselves. However, the court concluded that the First Amendment protections were not violated by L.B. 126.

In addressing Nebraska's referendum provisions, the district court acknowledged that L.B. 126 was not intended or designed

to facilitate or impede the operation of the referendum process. Nonetheless, it found the act's "deadline for the dissolution and attachment of the territories of the Class I school districts impedes and hampers, or renders ineffective, the ability of the people to complete their exercise of the referendum power in a meaningful manner," because "at the time of the general election, the effects of the legislation [will] have already been accomplished." The court further found that because Class I districts would be dissolved and reorganized 5 months before the referendum election, the vote would "represent a meaningless exercise in futility. Such a result would perhaps best be described as 'a nonbinding expression of public opinion.'"

On November 18, 2005, plaintiffs filed a second amended complaint. The second amended complaint included the additional claim that unless L.B. 126 is enjoined, Nebraska voters and citizens would be denied their right to free speech. Specifically, it was alleged that because the referendum vote would be meaningless without an injunction, discussion of the referendum issues would be curtailed, the supporters of the referendum would be unable to reach a large audience, and their ability to raise money would be "all but impossible" when Class I school districts had already ceased to exist. Plaintiffs' claim for relief again requested a permanent injunction until after the November 7, 2006, election.

On November 22, 2005, the district court conducted a trial on plaintiffs' request for a permanent injunction and declaratory judgment. In a written order granting the permanent injunction, entered on November 29, the district court first determined that the suit could not be maintained as a class action. In regard to plaintiffs' request for a permanent injunction, the district court explicitly incorporated the previous findings from its temporary injunction order. The court restated its conclusion that while L.B. 126 was not intended to interfere with the people's right to exercise their power of referendum, the act nonetheless irreparably harmed the people of Nebraska because a referendum election would be rendered meaningless by the act's June 15, 2006, effective date for the State Committee's orders of dissolution and attachment of Class I schools. The court therefore granted a permanent injunction prohibiting the State Committee

from issuing those orders until the results of the referendum election were known.

The district court denied plaintiffs' request for a declaration that L.B. 126 was unconstitutional, concluding that because it had granted plaintiffs' request for a permanent injunction, there was no justiciable issue between the parties. Despite the court's denial of declaratory relief, however, the basis for the court's granting of the injunction was indisputably the purported unconstitutionality of the act's effective date.

The State Committee filed a notice of appeal on November 30, 2005. Given the questions involved, this court has expedited the appeal.

## III. ASSIGNMENTS OF ERROR

The State Committee assigns the district court erred in (1) determining that L.B. 126 impedes the exercise of the referendum power in violation of Neb. Const. art. III, §§ 1, 3, and 4; (2) granting a permanent injunction when plaintiffs have no clear right to relief under these referendum provisions; and (3) determining that plaintiffs would be irreparably harmed if L.B. 126 were fully implemented before the referendum election to be held in November 2006.

On cross-appeal, plaintiffs assign, restated, that the district court erred in failing to determine that allowing the State Committee to dissolve Class I school districts before the referendum election would result in (1) a denial of the right to vote guaranteed by the First Amendment to the U.S. Constitution and Neb. Const. art. I, § 22; (2) a denial of the right to free speech guaranteed by the First Amendment to the U.S. Constitution and Neb. Const. art. I, § 5; and (3) "an impermissible advisory vote." Plaintiffs also assign that the district court erred in failing to declare that L.B. 126 violates these constitutional provisions. Finally, plaintiffs argue this court's decision in *Duggan v. Beermann*, 245 Neb. 907, 515 N.W.2d 788 (1994), should be overruled.

## IV. STANDARD OF REVIEW

[1] An action for injunction sounds in equity. In an appeal of an equity action, an appellate court tries the factual questions de novo on the record and reaches a conclusion independent of

the findings of the trial court. *Denny Wiekhorst Equip. v. Tri-State Outdoor Media*, 269 Neb. 354, 693 N.W.2d 506 (2005).

■ The constitutionality of a statute is a question of law, and this court is obligated to reach a conclusion independent of the decision reached by the trial court. *State v. Diaz*, 266 Neb. 966, 670 N.W.2d 794 (2003).

■ Constitutional interpretation is a question of law on which the Nebraska Supreme Court is obligated to reach a conclusion independent of the decision by the trial court. *Hall v. Progress Pig, Inc.*, 259 Neb. 407, 610 N.W.2d 420 (2000).

## V. ANALYSIS

The State Committee contends that because the district court's order granting a permanent injunction was based on its determination that the effective date of the dissolution orders under L.B. 126 impermissibly burdened the people's right of referendum, this court may affirm the judgment only if it concludes that L.B. 126 violates the referendum provisions of the Nebraska Constitution. The State Committee argues that L.B. 126 does not violate those provisions.

Plaintiffs contend that the Legislature's imposition of a June 15, 2006, effective date for orders dissolving Class I school districts violates Neb. Const. art. III, § 4, because it impedes and hampers the people's ability to exercise their right of referendum in a meaningful way. In their cross-appeal, plaintiffs also argue that allowing Class I school districts to be dissolved before a referendum election violates the right to vote and the right to free speech guaranteed by the Nebraska and U.S. Constitutions.

■ An injunction is an extraordinary remedy and ordinarily should not be granted unless the right to an injunction is clear, the damage is irreparable, and the remedy at law is inadequate to prevent a failure of justice. See *State ex rel. City of Alma v. Furnas Cty. Farms*, 266 Neb. 558, 667 N.W.2d 512 (2003). In this case, the purported unconstitutionality of L.B. 126 is the only clear right to relief which plaintiffs claim as support for the injunction. Indeed, this is the only clear right to relief plaintiffs could claim to support an injunction against the implementation of L.B. 126. See *State ex rel. Stenberg v. Moore*, 249 Neb. 589, 595, 544 N.W.2d 344, 349 (1996) (stating that "[u]nless

restricted by some provision of the state or federal Constitution, the Legislature may enact laws and appropriate funds for the accomplishment of any public purpose").

When a party seeks to enjoin the invocation or implementation of a legislative enactment, "[t]he judiciary may not declare an act of the Legislature unconstitutional unless it clearly contravenes some provision of the fundamental law." *State ex rel. Meyer v. County of Lancaster*, 173 Neb. 195, 200, 113 N.W.2d 63, 67 (1962). It is not the province of the court to annul a legislative act unless it clearly contravenes the Constitution, and no other resort remains. *Id.*

In addressing a constitutional challenge to a statute, the issue is whether the statute impinges on a constitutionally protected right or whether the statute creates a suspect classification. See, *State v. Popco, Inc.*, 247 Neb. 440, 528 N.W.2d 281 (1995); *Robotham v. State*, 241 Neb. 379, 488 N.W.2d 533 (1992), quoting *Dallas v. Stanglin*, 490 U.S. 19, 109 S. Ct. 1591, 104 L. Ed. 2d 18 (1989). The party challenging the constitutionality of a statute bears the burden to clearly establish the unconstitutionality of a statutory provision. *State v. Divis*, 256 Neb. 328, 589 N.W.2d 537 (1999).

Plaintiffs do not contend that L.B. 126 creates a suspect classification. Their challenge is limited to the act's imposition of a June 15, 2006, effective date for orders dissolving Class I school districts, which date they claim violates various constitutional provisions of the Nebraska and federal Constitutions. Initially, we point out that there is nothing inherently improper about the Legislature's June 15, 2006, effective date for the dissolution and attachment orders under L.B. 126.

The Legislature has plenary legislative authority except as limited by the state and federal Constitutions. *State ex rel. Stenberg, supra.* The Nebraska Constitution is not a grant, but, rather, is a restriction on legislative power, and the Legislature may legislate upon any subject not inhibited by the Constitution. *Id.* The only restriction on the Legislature's power to determine the effective date of its enactments comes from Neb. Const. art. III, § 27, which, in relevant part, provides:

No act shall take effect until three calendar months after the adjournment of the session at which it passed, unless in

case of emergency, which is expressed in the preamble or body of the act, the Legislature shall by a vote of two-thirds of all the members elected otherwise direct.

The 99th Legislature adjourned on June 3, 2005, the same day that L.B. 126 was passed—over the Governor's veto. None of the deadlines contained within the act required any action to be taken before September 10, 2005, which was more than 3 months after the Legislature adjourned. See Neb. Rev. Stat. § 79-4,112(1) (Supp. 2005). Further, there is no constitutional requirement that the Legislature delay the effective dates of its enactments until after a possible referendum election occurs. Thus, unless the effective date of the dissolution orders violates some other constitutional provision, this court may not interfere with this grant of constitutional authority. See *Read v. City of Scottsbluff*, 179 Neb. 410, 138 N.W.2d 471 (1965) (stating that courts should not interfere with legislative determination of emergency, making legislation effective upon passage and precluding suspension of act until next general election, unless act violates constitutional mandate).

With this background, we now turn to the central issue raised by the State Committee. Simply stated, that issue is whether the district court erred in concluding that the effective date of L.B. 126, for orders dissolving and reorganizing Class I school districts, violated the right of referendum reserved to the people by the Nebraska Constitution.

### 1. NEBRASKA'S REFERENDUM PROVISIONS

#### (a) Neb. Const. art. III, § 4

Neb. Const. art. III, § 4, sets forth the number of votes required *to enact* a ballot petition. In addition, § 4 provides: "The provisions with respect to the initiative and referendum shall be self-executing, *but legislation may be enacted to facilitate their operation*." (Emphasis supplied.)

In contrast, article III, § 3, sets forth the number of signatures required *to invoke* the power to place a referendum measure on the ballot and the number of signatures required to simultaneously invoke the power to suspend an act's operation until approved by the voters. The district court and plaintiffs have relied on cases previously decided by this court applying the italicized

provision of § 4 to support the determination that L.B. 126 impermissibly burdens the right of referendum. However, as further explained below, we determine these cases are not applicable to the specific issues raised in this appeal.

This court has held that "[l]egislation which hampers or renders ineffective the power reserved to the people is unconstitutional." *State ex rel. Stenberg v. Moore*, 258 Neb. 199, 211, 602 N.W.2d 465, 475 (1999) (holding that statute regulating initiative and referendum procedures, requiring exact match between signature information placed on initiative petitions and voter registration records, was unconstitutional because it hampered ability of public to engage in initiative process and did not act to prevent fraud). See, also, *State ex rel. Stenberg v. Beermann*, 240 Neb. 754, 757, 485 N.W.2d 151, 153 (1992) (holding, without reaching First Amendment challenge, that sections of regulating statute making it criminal offense to circulate ballot petition outside of county in which circulator is registered to vote "violate Neb. Const. art. III, § 4, by impeding the initiative and referendum process instead of facilitating the process as the Constitution requires"); *Klosterman v. Marsh*, 180 Neb. 506, 143 N.W.2d 744 (1966) (construing regulating statute as not requiring sponsors to include in referendum petition text of amendment to act they sought to repeal); *State, ex rel. Ayres, v. Amsberry*, 104 Neb. 273, 177 N.W. 179 (1920) (refusing to interpret regulating statute to require referendum sponsors to attach full copy of act to each petition sheet because such law would be unnecessarily obstructive), *vacated on other grounds* 104 Neb. 279, 178 N.W. 822.

In each of these cases, however, at issue were regulating statutes specifically intended to facilitate the initiative and referendum procedures and enacted pursuant to article III, § 4. The language extracted from these cases and relied upon by plaintiffs and the district court simply has no application outside of regulating legislation intended to facilitate the initiative or referendum procedures.

*Klosterman, supra*, a case relied upon by plaintiffs and the district court, is illustrative. The district court's quotation of language from *Klosterman* in both its November 14 and 29, 2005, orders is not a reflection of its reliance on the *Klosterman*

holding, wherein this court held that the *timing and procedural* requirements of the constitutional provisions and relevant statutes relating to the referendum had been met in that case. Rather, the district court's conclusion, as well as plaintiffs' argument, that the effective date of L.B. 126 "impedes and hampers, or renders ineffective, the ability of the people to complete their exercise of the referendum power" rests upon the language from *State, ex rel. Ayres, supra,* as quoted in *Klosterman,* 180 Neb. at 513, 143 N.W.2d at 749, which states, " '*Any* legislation which would hamper or render ineffective the power reserved to the people would be unconstitutional.' " (Emphasis supplied.) The district court interpreted the word "any" to include even nonfacilitating statutes such as L.B. 126. The quoted language from *State, ex rel. Ayres,* however, must be read in the context in which it was written; i.e., in a case involving the constitutional validity of "facilitating" statutes as that term is used within article III, § 4. More precisely, the quoted language from *State, ex rel. Ayres,* has consistently been relied upon by this court only when considering the constitutionality of "any [*facilitating*] legislation which would hamper or render ineffective the power reserved to the people." See *State, ex rel. Ayres, v. Amsberry,* 104 Neb. at 276-77, 177 N.W. at 180. That was so in *Klosterman* as it was in all other cases relied upon by plaintiffs and the district court. The "*Ayres* test" is, therefore, applied to facilitating statutes, not all acts of the Legislature.

L.B. 126 does not present the same legal issue that concerned this court in *Klosterman, supra,* and *State, ex rel. Ayres, supra,* or the additional cases relied upon by plaintiffs and the district court. There is simply no provision within L.B. 126 intended to regulate the referendum process. Because neither the "facilitating" provision nor the enactment provisions of article III, § 4, are at issue, we determine this case is controlled by article III, § 3. We therefore turn our attention to that section.

### (b) Neb. Const. art. III, § 3

Neb. Const. art. III, § 3, specifically reserves to the people the power of referendum and clearly defines the scope of that right and its limitations. See *Klosterman v. Marsh,* 180 Neb. 506, 509, 143 N.W.2d 744, 747 (1966) ("[a]rticle III, section 3,

of the Constitution of Nebraska, specifically applies to the referendum").

In ascertaining the intent of a constitutional provision from its language, the court may not supply any supposed omission, or add words to or take words from the provision as framed. *DeCamp v. State*, 256 Neb. 892, 594 N.W.2d 571 (1999). Constitutional provisions are not open to construction as a matter of course; construction is appropriate only when it has been demonstrated that the meaning of the provision is not clear and therefore construction is necessary. *Hall v. Progress Pig, Inc.*, 259 Neb. 407, 610 N.W.2d 420 (2000). Neb. Const. art. III, § 3, provides, in relevant part:

> The second power reserved is the referendum which may be invoked, by petition, against any act or part of an act of the Legislature, except those making appropriations for the expense of the state government or a state institution existing at the time of the passage of such act. Petitions invoking the referendum shall be signed by not less than five percent of the registered voters of the state, distributed as required for initiative petitions, and filed in the office of the Secretary of State within ninety days after the Legislature at which the act sought to be referred was passed shall have adjourned sine die or for more than ninety days. . . . When the referendum is thus invoked, the Secretary of State shall refer the same to the electors for approval or rejection at the first general election to be held not less than thirty days after the filing of such petition.

> When the referendum is invoked as to any act or part of act, other than emergency acts or those for the immediate preservation of the public peace, health, or safety, *by petition signed by not less than ten percent of the registered voters of the state* distributed as aforesaid, it shall suspend the taking effect of such act or part of act until the same has been approved by the electors of the state.

(Emphasis supplied.)

The parties stipulated that at the time the referendum petitions were required to be filed with the Secretary of State, September 1, 2005, there were 1,128,694 registered voters in Nebraska and that the local schools committee had timely submitted 87,006

valid signatures to the Secretary of State with their referendum petition. Thus, the number of petition signatures was equal to a little more than 7.7 percent of the registered voters. Under the plain language of article III, § 3, this amount was sufficient to refer L.B. 126 to the voters at the next general election, but insufficient to suspend the operation of the act. Nonetheless, plaintiffs argue that the referendum provisions should be liberally construed to mean that "the ten percent method is not the exclusive means to prevent a statute from going into effect prior to a referendum election." Brief for appellee at 10.

This court has held that Nebraska's "[c]onstitutional provisions with respect to the right of initiative and referendum reserved to the people should be construed *to make effective the powers reserved.*" (Emphasis supplied.) *Klosterman v. Marsh*, 180 Neb. 506, 513, 143 N.W.2d 744, 749 (1966).

In this circumstance, article III, § 3, imposes a specific requirement to suspend the operation of an act. Referendum sponsors must secure more votes to suspend an act from taking effect prior to a referendum election than required to place a referendum on the ballot at the next general election. Section 3 plainly states that in order to suspend an act's operation until it is approved by the voters, the referendum petition must include the signatures of 10 percent of the State's registered voters.

A rule of construction cannot authorize this court to expand the right of referendum beyond what has been reserved or to ignore its plain limitations. "It is the duty of courts to ascertain and to carry into effect the intent and purpose of the framers of the Constitution or of an amendment thereto." *State ex rel. Meyer v. County of Lancaster*, 173 Neb. 195, 200, 113 N.W.2d 63, 67 (1962). Because article III, § 3, specifically contemplates under what circumstances an act will be suspended pending a referendum election, this court must respect and give effect to that limitation.

As noted, plaintiffs' primary claim to a clear right to an injunction is their argument that the effective date of L.B. 126 will deny them the right of referendum. However, because plaintiffs have failed to obtain the necessary number of signatures that would suspend the operation of L.B. 126 pending a referendum election, they have received exactly the right reserved to them in

article III, § 3, which is the right to have L.B. 126 referred to the voters for approval or rejection at the next general election. Plaintiffs have not shown they are entitled to have the act suspended in the interim. The referendum provisions of the Nebraska Constitution are not violated by this result; to the contrary, they demand it.

The history of article III, § 3, is consistent with our determination. The initiative and referendum amendments to article III were originally adopted in 1912. At that time, what is now § 3 required referendum sponsors to obtain the signatures of 10 percent of the legal voters to place a referendum measure on the ballot: "It may be ordered by a petition of ten per cent of the legal voters of the state, distributed as required for initiative petitions." Neb. Const. art. III, § 1B (adopted 1912, 1911 Neb. Laws, ch. 223, § 2, p. 672). If the sponsors obtained this percentage of signatures, then the operation of any referred, nonemergency act would be suspended until approved by the voters. *Id.*

This provision was amended by the Constitutional Convention of 1919-1920. The amendment lowered the percent of signatures needed to place a referendum on the ballot from 10 percent to 5 percent, but *retained* the 10-percent requirement to suspend the operation of a nonemergency act until approved in a referendum election.

This history clearly demonstrates the people's decision to make the referendum process more attainable by requiring only 5 percent of the registered voters to invoke the power of referendum. It just as clearly demonstrates the people's desire to retain the higher threshold to suspend an act of the Legislature pending the referendum vote.

A constitution represents the supreme written will of the people regarding the framework for their government. *Pig Pro Nonstock Co-op v. Moore*, 253 Neb. 72, 568 N.W.2d 217 (1997). When the language of the state Constitution is clear, unambiguous, and does not violate the U.S. Constitution, it is not for this court to read into it that which is not there. In the circumstance presently before the court, the state Constitution unambiguously sets forth the procedure the people of Nebraska have determined to follow in the event less than 10 percent of the registered voters have signed a referendum petition. It is not for this court to

apply article III, § 3, otherwise. We conclude that L.B. 126 does not violate Nebraska's referendum provisions.

Plaintiffs, however, contend that L.B. 126 violates other constitutional provisions. These questions comprise the substance of plaintiffs' claims in their cross-appeal, and it is to those claims that we now turn our attention.

## 2. CROSS-APPEAL CHALLENGES

In their cross-appeal, plaintiffs primarily argue that allowing Class I school districts to be dissolved before a referendum election violates the right to vote and the right to free speech guaranteed by the Nebraska and U.S. Constitutions.

### (a) Right to Vote

■■■■ Plaintiffs assert that dissolving Class I school districts before the referendum election violates their right to vote on the forced consolidation of Class I school districts. We disagree. The U.S. Supreme Court has stated that the right to vote is a fundamental political right under the federal Constitution because it preserves all other rights. *Reynolds v. Sims*, 377 U.S. 533, 84 S. Ct. 1362, 12 L. Ed. 2d 506 (1964), citing *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S. Ct. 1064, 30 L. Ed. 220 (1886). The Court in *Reynolds* explicitly held that "all qualified voters have a constitutionally protected right to vote . . . in state as well as in federal elections." *Reynolds*, 377 U.S. at 554. However, the fundamental right to vote in this country is the right to participate in representative government. See, *Kramer v. Union School District*, 395 U.S. 621, 626, 89 S. Ct. 1886, 23 L. Ed. 2d 583 (1969) ("[a]ny unjustified discrimination in determining who may participate in political affairs or in the selection of public officials undermines the legitimacy of representative government"); *Reynolds*, 377 U.S. at 559-60 ("'our Constitution's plain objective' was that 'of making equal representation for equal numbers of people the fundamental goal . . .'"); *Wesberry v. Sanders*, 376 U.S. 1, 17, 84 S. Ct. 526, 11 L. Ed. 2d 481 (1964) ("[n]o right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live").

■■■ In contrast to the right to participate in representative government, the people's reservation in a state constitution of

the right of referendum "is a means for direct political participation, allowing the people the final decision, amounting to a veto power, over enactments of representative bodies." *Eastlake v. Forest City Enterprises, Inc.*, 426 U.S. 668, 673, 96 S. Ct. 2358, 49 L. Ed. 2d 132 (1976).

The federal Constitution does not prohibit direct democracy, see *Eastlake*, 426 U.S. at 679 ("[a]s a basic instrument of democratic government, the referendum process does not, in itself, violate the Due Process Clause"), but neither does it confer or guarantee such rights. See *Meyer v. Grant*, 486 U.S. 414, 416, 108 S. Ct. 1886, 100 L. Ed. 2d 425 (1988) (stating that "Colorado is one of several States that *permits* its citizens to place propositions on the ballot through an initiative process" (emphasis supplied)).

Neither has this court interpreted the right to vote under Neb. Const. art. I, § 22, to extend beyond issues involving the right to participate in representative government. See, e.g., *Pick v. Nelson*, 247 Neb. 487, 528 N.W.2d 309 (1995); *Carpenter v. State*, 179 Neb. 628, 139 N.W.2d 541 (1966); *Baker v. Moorhead*, 103 Neb. 811, 174 N.W. 430 (1919); *State, ex rel. Harte, v. Moorhead*, 99 Neb. 527, 156 N.W. 1067 (1916); *Morrissey v. Wait*, 92 Neb. 271, 138 N.W. 186 (1912).

Because the rights of initiative or referendum are a means of direct democracy, federal courts have concluded that the partial reservation or total absence of the right of initiative or referendum in a state constitution does not violate a fundamental right to vote. See, e.g., *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291 (6th Cir. 1993); *Save Palisade Fruitlands v. Todd*, 279 F.3d 1204 (10th Cir. 2002); *Kelly v. Macon-Bibb County Bd. of Elections*, 608 F. Supp. 1036 (M.D. Ga. 1985). Compare *Stone v. City of Prescott*, 173 F.3d 1172 (9th Cir. 1999).

The reasoning of these courts is applicable to this appeal. Under both Neb. Const. art. I, § 22, and the federal Constitution, the constitutionally protected right to vote is limited to the right to participate in representative government. Because the right to participate in representative government is not implicated by a referendum proceeding, plaintiffs' constitutional right to vote has not been violated by the state constitution's limitations on their right to refer L.B. 126 to the voters. Thus, to the extent plaintiffs

have a right to directly vote on the issue of Class I school con-solidations, that right is limited to what has been reserved to the people by the Nebraska Constitution. See *McPherson v. Blacker*, 146 U.S. 1, 25, 13 S. Ct. 3, 36 L. Ed. 869 (1892) ("sovereignty of the people [comprising the political community of a state] is exercised through their representatives in the legislature, unless by the fundamental law power is elsewhere reposed").

We conclude plaintiffs' claim that L.B. 126 violates their con-stitutional right to vote is without merit.

## (b) Right to Free Speech

■ Plaintiffs also assign that dissolving Class I school dis-tricts prior to the November 7, 2006, referendum election results in a denial of the right of free speech guaranteed by the First Amendment to the U.S. Constitution and Neb. Const. art. I, § 5. Again, we disagree. The parameters of the constitutional right to freedom of speech are the same under both the federal and the state Constitutions. *State v. Rabourn*, 269 Neb. 499, 693 N.W.2d 291 (2005).

■ "States allowing ballot initiatives have considerable lee-way to protect the integrity and reliability of the initiative proc-ess . . . ." *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 191, 119 S. Ct. 636, 142 L. Ed. 2d 599 (1999). But if a state has conferred the right of initiative and referendum, it is "obligated to do so in a manner consistent with the Constitution." See *Meyer v. Grant*, 486 U.S. 414, 420, 108 S. Ct. 1886, 100 L. Ed. 2d 425 (1988).

■ State restrictions on initiative and referendum rights violate the First Amendment's free speech guarantee when they "significantly inhibit communication with voters about proposed political change, and are not warranted by the state interests (administrative efficiency, fraud detection, informing voters) alleged to justify those restrictions." *Buckley*, 525 U.S. at 192 (holding that Colorado's requirements that circulators be regis-tered voters and wear identification badges violated free speech guarantee). Direct restrictions on initiative and referendum pro-cedures that curtail political expression are subject to "exacting scrutiny." *Meyer*, 486 U.S. at 420 (affirming court of appeals' decision that prohibition against paid circulators violated First

Amendment protections of free speech). Accord *State v. Radcliffe*, 228 Neb. 868, 424 N.W.2d 608 (1988).

Although plaintiffs primarily rely on *Meyer* and *Buckley* to support their position, neither case is applicable to initiative or referendum processes that do not restrict political communication or association. See, *Dobrovolny v. Moore*, 126 F.3d 1111 (8th Cir. 1997); *Stone v. City of Prescott*, 173 F.3d 1172 (9th Cir. 1999); *Biddulph v. Mortham*, 89 F.3d 1491 (11th Cir. 1996). Neither do they apply to legislation which is not intended to regulate these procedures.

L.B. 126 does not impose any restrictions or conditions on plaintiffs' right to communicate with voters about the political change they seek. Compare *State ex rel. Stenberg v. Moore*, 258 Neb. 738, 605 N.W.2d 440 (2000) (holding that state restriction on timing and amount of independent expenditures by political groups supporting candidates was unconstitutional regulation of elections and impermissibly burdened right to engage in political speech). Nor does L.B. 126 attempt to regulate the circulation of initiative or referendum petitions. Compare *Radcliffe, supra*. Rather, plaintiffs' assertion that their right to free speech has been diminished is based entirely upon their claim that unless L.B. 126 is suspended until the referendum vote, the ability of those opposed to L.B. 126 to persuade voters to reject it will be more difficult. Plaintiffs' claim is not based upon any actual restrictions on their right to communicate with voters.

Given the conditions the people of Nebraska have imposed on their power to suspend an act's operation pending a referendum election, the "difficulty," as described by plaintiffs, can be avoided only by this court's expanding the scope of the referendum power itself. As discussed, the U.S. Constitution does not guarantee a right of referendum, and to expand this right would be to ignore the clear and unambiguous procedure set out by the people in article III, § 3, of the state Constitution. This we shall not do. See *Biddulph*, 89 F.3d at 1500 (" '[t]he state, having created such a procedure, retains the authority to interpret its scope and availability' ").

We conclude that plaintiffs' claim that L.B. 126 violates their constitutional right to free speech, based on the fact that Nebraska's referendum provisions make it difficult for them to

repeal the act and even more difficult to suspend its operation, is without merit.

### (c) Impermissible Advisory Vote

Plaintiffs also contend the district court erred in failing to determine that dissolving Class I school districts before the referendum election would result in an impermissible advisory vote. The only case cited by plaintiffs in support of this argument is *State ex rel. Brant v. Beermann*, 217 Neb. 632, 350 N.W.2d 18 (1984). In *State ex rel. Brant*, this court refused to issue a writ of mandamus requiring the Secretary of State to place an initiative measure on the ballot. If passed, the initiative would have stated that the people of Nebraska favored a nuclear freeze and would have required the Governor to forward this statement of position to officials in the U.S. and Soviet Union governments. Because the proposed initiative was without the force of law, this court determined the measure was not a proper subject for initiative.

*State ex rel. Brant* is not applicable to these facts. The power of referendum is the people's reservation of "power at their own option to approve or reject at the polls any act, item, section, or part of any act passed by the Legislature." Neb. Const. art. III, § 1. If the voters reject L.B. 126 at the referendum election, the act will stand repealed. See *Klosterman v. Marsh*, 180 Neb. 506, 143 N.W.2d 744 (1966) (stating that through power of referendum, people may repeal enactments of Legislature). To repeal is to rescind or abrogate an existing law. See Black's Law Dictionary 1325 (8th Ed. 2004).

When the people invoke the right to a referendum, they are exercising their coequal legislative power to expressly approve or repeal the enactments of the Legislature. See, *Klosterman, supra*; *State ex rel. Stenberg v. Moore*, 258 Neb. 199, 210-11, 602 N.W.2d 465, 474 (1999) (stating that "the Legislature and the electorate are concurrently equal in rank as sources of legislation" through power of initiative). In no sense can such an act be considered advisory to the Legislature or without the force of law. This assignment of error is without merit.

### (d) *Duggan v. Beermann*

Plaintiffs argue that this court should overrule its decision in *Duggan v. Beermann*, 245 Neb. 907, 515 N.W.2d 788 (1994)

(holding that 1988 amendment of article III, §§ 2 and 3, to require percentage of signatures from "registered voters" instead of "electors" on ballot petitions, had repealed by implication requirement in article III, § 4, that requisite percentage of signatures be based on number of votes cast in preceding gubernatorial election). Plaintiffs contend the reversal of *Duggan* would result in a sufficient number of signatures on the referendum petition to suspend the operation of L.B. 126.

Although not cited by plaintiffs, this issue is controlled by this court's decision in *State ex rel. Stenberg v. Moore*, 251 Neb. 598, 558 N.W.2d 794 (1997) (concluding that voters' rejection of 1996 initiative, which was intended to return state Constitution to pre-1988 requirement that percentage of signatures needed for ballot petitions be tied to number of votes cast for Governor in preceding election, defeated attorney general's argument that voters did not understand effect of voting for 1988 initiative to amend constitution). This court could not overrule *Duggan* except by ignoring the voters' clear rejection in 1996 of the construction of article III that plaintiffs now urge this court to adopt. See *Moore*, 251 Neb. at 606, 558 N.W.2d at 799 ("[t]o now ignore the results of the vote [on the 1996 initiative] would be to deny such voters the same rights that the Attorney General seeks to protect"). We find nothing in plaintiffs' argument to persuade us that *Duggan, supra*, was wrongly decided, and we decline plaintiffs' invitation to revisit that determination.

### (e) Declaratory Judgment

Finally, plaintiffs contend the district court erred by concluding there was no justiciable issue upon which it could declare L.B. 126 unconstitutional in light of its permanent injunction order. Having determined that plaintiffs have failed to show that L.B. 126 violates any of their constitutional rights, this court has no need to reach this assignment of error.

### VI. CONCLUSION

Plaintiffs have failed to show that they have a clear right to relief which would support a permanent injunction against a legislative enactment. Absent a showing that L.B. 126 violates some provision of the state or federal Constitution, this court is not free to enjoin or strike down laws enacted by the Legislature.

The people of Nebraska have unambiguously set forth in article III, § 3, of the state Constitution that an act of the Legislature shall be suspended *only* in the event that a referendum petition is signed by "not less than ten percent of the registered voters." In this case, there is no dispute that plaintiffs collected the signatures of only a little more than 7.7 percent of the registered voters in Nebraska. Under such circumstance, to suspend "the taking effect" of L.B. 126 pending the referendum vote would require this court to ignore the will of the people as clearly expressed in the state Constitution. This we will not do.

To the extent plaintiffs argue that the effective date of L.B. 126 illustrates a need to change the referendum process, such is for the people of Nebraska to address and decide, not this court. Our responsibility, absent an ambiguity or a constitutional impediment, is to apply the people's constitution as written. That is what we do today.

The judgment of the district court is reversed, and the injunction is dissolved.

REVERSED AND INJUNCTION DISSOLVED.

WRIGHT, J., not participating.